O

# UNITED  STATES  DISTRICT  COURT

# FOR  THE  CENTRAL  DISTRICT  OF  CALIFORNIA

| | |
|---|---|
| RONALD FARRIS, ET AL., ) | **CASE NO. CV 05-6166 AG (CTx)** |
| **Plaintiffs,** ) | |
| ) | **ORDER CONCERNING MOTIONS** |
| **v.** ) | **FOR SUMMARY JUDGMENT** |
| COUNTY OF RIVERSIDE, ) | |
| **Defendant.** ) | |
| _____ ) | |

This case involves certain deputies' claims under the Fair Labor Standards Act ("FLSA"). Plaintiffs are sworn and un-sworn deputies ("Plaintiffs") that work for Defendant County of Riverside ("Defendant") and believe Defendant has deprived them of compensation due under the FLSA.  More specifically, Plaintiffs claim that Defendant wrongfully denied them overtime compensation, or at least regular compensation, for work-related activities done before and after their shifts.

Defendant has filed four motions for partial summary judgment.  Each motion addresses a discrete issue and requests that the Court rule in Defendant's favor on that issue.  Defendant filed: (1) a Motion for Partial Summary Judgment Re: 29 U.S.C. Section 207(k) Exemption ("Exemption Motion"); (2) a Motion for Partial Summary Judgment Regarding Application of 29 U.S.C. Section 207(h)(2) Offsets ("Offsets Motion"); (3) a Motion for Partial Summary

Judgment Re: *De Minimis* Doctrine ("De Minimis Motion"); and (4) a Motion for Summary Judgment Re: Briefing Start Times ("Briefing Motion").

The Court has reviewed the thorough filings of the parties. The Exemption Motion is GRANTED. The Offsets Motion is GRANTED IN PART and DENIED IN PART. The De Minimis Motion is GRANTED. And the Briefing Motion is DENIED.

**BACKGROUND**

Most working people dress for work and undress after. This process assumes increased importance for the deputies involved in this case. In a prior Order, the Court recognized that their "distinctive dark uniform projects an aura of authority which directly contributes to a deputy's duties." (Order Granting in Part and Denying in Part Defendant County of Riverside's Motion for Partial Summary Judgment, January 28, 2008, 7:23-24.) And a jury, in an earlier phase of this case, found that Plaintiffs' "donning" and "doffing" of their uniform and equipment is "integral and indispensable to [their] principal law enforcement activities." (Phase One Special Verdict Questions 1-2.)

Plaintiffs' donning and doffing their uniform and equipment before and after they start their shifts, together with their preparation of patrol cars before shifts (collectively "pre/post-shift readiness activities"), are the core of this lawsuit. Plaintiffs believe that they are not compensated for the time spent doing these pre/post-shift readiness activities, which they claim violates the FLSA. They seek overtime pay and regular pay to remedy this perceived injustice.

An explanation of this case's procedural background will help provide a full understanding of the pending motions. Trial of this case was bifurcated into two phases, with Phase One to be decided by a jury and Phase Two to be decided by the Court. In Phase One, the jury determined the critical facts relevant to liability. It found that Defendant willfully violated the FLSA concerning Plaintiffs' donning and doffing of uniforms, donning and doffing of equipment, and vehicle preparations. (Phase One Special Verdict Question 11.)

The jury also determined the specific amount of time that different categories of Plaintiffs

spent doing these activities.  Plaintiffs include deputies with five different job classifications: patrol, sworn corrections, non-sworn corrections, court services, and corrections transportation. The jury found that patrol deputies spent 9 minutes donning and doffing their uniforms, 11 minutes donning and doffing their equipment, and 13 minutes preparing their patrol cars.  (Phase One Special Verdict Questions 3, 6.)  It also found that court services and corrections transportation deputies spent 9 minutes donning and doffing their uniforms and 11 minutes donning and doffing their equipment.  (Phase One Special Verdict Question 3.)  Sworn corrections deputies spent 9 minutes with uniforms and 6 minutes with equipment.  And non-sworn corrections deputies spent 9 minutes with uniforms and 2 with equipment.

Phase Two of the trial was designed to, among other things, allow Defendant's affirmative defenses to be tried by the Court based on the jury's factual findings in Phase One. Specifically, the Court authorized Defendant to present its "Second Affirmative Defense, Exemption from Overtime Requirements; Eighth Affirmative Defense, *De Minimis* Doctrine; and Fourteenth Affirmative Defense, Offset."  (Phase One Final Pretrial Conference Order 3:11-15.)  Defendant now brings three motions for summary judgment, each one addressing a different affirmative defense.

Defendant also filed a fourth motion for summary judgment ("Briefing Motion") asserting that "in many instances briefing commenced 10 minutes after the start of Plaintiffs' shifts, and therefore "Plaintiffs have already been compensated for 10 minutes of pre-briefing activities . . . ."  (Briefing Motion 1:9-12.)  Based on this assertion, Defendant asks the Court for summary judgment concerning whether "10 minutes must be subtracted from the damages calculations for Plaintiffs because they were given 10 minutes of [compensated] time to prepare for their shift on duty."  (Briefing Motion 1:12-15.)

Each motion involves facts specific to that particular motion.  Though many facts are undisputed, some disputed facts remain.  The Court must look at these facts in the context of relevant law and decide whether Plaintiffs can defeat Defendant's motions for summary judgment.  Accordingly, the Court will provide relevant facts in more detail in its analysis of the parties' arguments.

**PRELIMINARY MATTERS**

**1.    REQUEST FOR JUDICIAL NOTICE**

        To support its motions, Defendant asks the Court to take judicial notice of four documents: (1) October 8, 2004 Letter Ruling from United States Department of Labor, Wage and Hour Division, LFSA 2004-14; (2) *Nolan/Alaniz/Mata, et al. v. City of Los Angeles*, related Case Nos. CV 03-02190, 04-08592, 07-06782, Order & Memorandum Regarding Cross-Motions for Summary Judgment (C.D. Cal. December 1, 2008); (3) *Abbe v. City of San Diego*, Case No. 05cv1629, Order Granting Defendant's Motion for Summary Judgment (S.D. Cal. August 19, 2008); and (4) May 31, 2006 Wage and Hour Advisory Memorandum, United States Department of Labor, No. 2006-2.

        Under Federal Rule of Evidence 201(b), a judicially noticed fact must be one "not subject to reasonable dispute" because it is either generally known within the territorial jurisdiction of the trial court or capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b).  The documents in Defendant's Request for Judicial Notice meet the requirements of Rule 201(b).  Thus, the Court GRANTS the Request for Judicial Notice.

**2.    EVIDENTIARY OBJECTIONS**

        The parties also make evidentiary objections concerning the motions.  The Court did not rely on most of the evidence under objection.  Where this Order indicates that such evidence was relied upon, the applicable objections are OVERRULED.

**LEGAL STANDARD**

## 1.   THE TRADITIONAL SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only where the record, read in the light most favorable to the non-moving party, indicates that "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Material facts are those necessary to the proof or defense of a claim, as determined by reference to substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*  In deciding a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

The burden initially is on the moving party to demonstrate an absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.  If, and only if, the moving party meets its burden, then the non-moving party must produce enough evidence to rebut the moving party's claim and create a genuine issue of material fact. *Id.* at 322-23.  If the non-moving party meets this burden, then the motion will be denied. *Nissan Fire & Marine Ins. Co. v. Fritz Co., Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000).

"If summary judgment is not rendered on the whole action, the court should, to the extent practicable, determine what material facts are not genuinely at issue." Fed. R. Civ. P. 56(d)(1). The court "should then issue an order specifying what facts – including items of damages or other relief – are not genuinely at issue.  The facts so specified must be treated as established in the action." *Id.*

## 2.   THE EFFECT OF A NONJURY TRIAL

Defendant believes the summary judgment standard should be relaxed at this point in this

case.  It asserts that, "to the extent this Court finds any dispute of fact, the Court is nonetheless in a position to resolve such disputes," because the issues in Phase Two will be tried by the Court and not a jury.  (Exemption Motion Reply 4:n.2; *see* Briefing Start Times Motion 15:2-5.)  While the Court does not wholeheartedly adopt Defendant's position, Ninth Circuit precedent does permit courts to decide factual issues in summary judgment motions in certain situations.

> [W]here the ultimate fact in dispute is destined for decision by the court rather than by a jury, there is no reason why the court and the parties should go through the motions of a trial if the court will eventually end up deciding on the same record. However, just as the procedural shortcut must not be disfavored, courts must not rush to dispose summarily of cases - especially novel, complex, or otherwise difficult cases of public importance - unless it is clear that more complete factual development could not possibly alter the outcome and that the credibility of the witnesses' statements or testimony is not at issue.

*TransWorld Airlines, Inc. v. American Coupon Exchange, Inc.*, 913 F.2d 676, 684-85 (9th Cir. 1990).  In light of *TransWorld*, Plaintiffs are incorrect to suggest that the Court may not "resolve conflicting evidence in ruling on defendant's motion[s] for summary judgment . . . ."  (Briefing Motion Opp'n 5:20-22.)

The Court will decide disputed factual issues if "the record on the motion persuades the [C]ourt that a trial would add nothing to its ability to decide the case – e.g., there are no credibility issues."  Schwarzer, et al., Federal Civil Procedure Before Trial, 14:236 (2009) (collecting cases).  But if a trial would be helpful in determining material factual issues, summary judgment will be inappropriate.

## ANALYSIS

## 1.   EXEMPTION MOTION

Under the FLSA, when employees work over forty hours a week, their employers must compensate them at a rate of at least one and a half times the regular work rate for the excess

work. 29 U.S.C. § 207(a)(1). But public employers of law enforcement personnel or firefighters may elect a limited exemption from the 40 hour per week overtime limit. 29 U.S.C. § 207(k) ("Section 7(k)"). This exemption "increases the overtime limit slightly" and gives qualified employers "greater flexibility to select the work period over which the overtime limit will be calculated." *Adair v. City of Kirkland*, 185 F.3d 1055, 1060 (9th Cir. 1999) (citing 29 C.F.R. § 553.230). Department of Labor ("DOL") regulations concerning Section 7(k) provide that if an employer chooses a 14 day work period, overtime begins to accrue after employees have worked 86 hours. 29 C.F.R. § 553.230 (providing a chart of "[m]aximum hours standards" corresponding to the number of days in a work period).

Here, Defendant contends that it adopted a Section 7(k) exemption by establishing a work period of 14 days that regularly recurred in practice. If it did adopt a Section 7(k) exemption, Plaintiffs will have to establish they worked over 86 hours every two weeks, instead of the standard 80 hours, to show that they are owed FLSA overtime.

This would make the battle much harder for Plaintiffs. The amount of time they engage in pre/post-shift readiness activities differs between their job classifications, but the Plaintiffs that spent the most time doing pre/post-shift readiness activities are the patrol officers. The patrol officers spent 9 minutes per day donning and doffing uniforms, 11 minutes donning and doffing equipment, and 13 minutes preparing patrol cars, totaling 33 minutes. (Phase One Special Verdict ¶ 3, 6.) Over two weeks, the patrol officers worked two 4 day, 10 hour per day schedules, for a total of 80 hours. (Defendant's Statement of Undisputed Facts in support of Exemption Motion ("EM-SUF") ¶ 7.) Thus, Plaintiffs spend at most 33 minutes of unscheduled pre/post-shift readiness activities 8 times per work period, equaling 264 minutes, or 4.4 hours. When this time is added to Plaintiffs' 80 scheduled hours, it equals 84.4 hours. Since 84.4 hours is under the 86 hour overtime limit in DOL regulations, if Defendant adopted an exemption it will not be liable to Plaintiffs who worked only the typical 80 hours per two weeks.

A jury found the amounts of time Plaintiffs spent in pre/post-shift readiness activities, so

there is no dispute about those figures.  But the debate intensifies concerning whether Defendant actually adopted a Section 7(k) exemption.  Plaintiffs make multiple arguments that the exemption issue doesn't doom their case.  These arguments fail to persuade the Court, which is compelled to agree with Defendant.

### 1.1    Is it appropriate to decide the exemption issue on summary judgment?

To prove an exemption under Section 7(k), a public employer "must show that it established a 7(k) work period and that the 7(k) work period was 'regularly recurring.'"  *Adair v. City of Kirkland*, 185 F.3d 1055, 1060 (9th Cir. 1999) (quoting *McGrath v. City of Philadelphia*, 864 F. Supp. 466, 474 (E.D. Pa. 1994)); *see* 29 C.F.R. § 553.224 ("As used in section 7(k), the term 'work period' refers to any established and regularly recurring period of work . . . .").  Whether a 7(k) exemption was adopted is generally an issue of fact.  *Adair*, 185 F.3d at 1060.  A casual glance at this rule might lead a casual reader to conclude that summary judgment should be denied on this basis alone.  But here, the issue is not so straightforward.

Whether an employer adopted a Section 7(k) exemption is an ultimate fact that may be decided on summary judgment if the underlying specific facts are undisputed.  "Ultimate facts are conclusions or characterizations *based on* historical facts: e.g., whether a party was acting in the course and scope of employment, or was exercising due care, etc."  Schwarzer, et al., Federal Civil Procedure Before Trial, 14:224 (2009) (emphasis in original).  While summary judgment is an inappropriate place to adjudicate disputed historical facts, it sometimes is a correct procedure for resolving arguments concerning ultimate facts.  *Id*.  "Summary judgment is appropriate where the underlying facts are undisputed, and the record reveals no evidence from which reasonable persons might draw conflicting inferences about these facts."  *Prinzi v. Keydril Co.*, 738 F.2d 707, 709 (5th Cir. 1984).  But if resolution of an ultimate fact requires "experience with the mainsprings of human conduct" or "reference to the data of practical human

8

experience," the matter typically must proceed to trial.  *Nunez v. Superior Oil Co.*, 572 F.2d 1119, 1126 (5th Cir. 1978) (quoting *Commissioner of Internal Revenue v. Duberstein*, 363 U.S. 278, 289 (1960)).

Here, there is no real dispute concerning the specific facts underlying the issue of whether Defendant adopted a Section 7(k) exemption.  The parties' arguments rely on certain documents, especially the Memorandums of Understanding ("MOUs") between the Riverside Sheriffs' Association and Defendant for 2001-2004 and 2005-2007, and the Payroll Activity Reports for the different categories of Plaintiffs.  These documents do not conflict.  Their contents are undisputed.  And the key issue is simply whether they show that Defendant "established a 7(k) work period and that the 7(k) work period was 'regularly recurring.'"  *Adair*, 185 F.3d at 1060. The Court does not have to make credibility assessments or decipher the parties' intent to resolve these issues.  Rather, the Court must analyze the undisputed contents of the relevant documents and determine their legal effect.

Accordingly, the Section 7(k) exemption issue is well suited for summary judgment.  *See Caminiti v. County of Essex, N.J.*, 2007 WL 2226005 (D. N.J. 2007) (quoting *McGrath v. City of Philadelphia*, 864 F. Supp. 466, 478 (E.D. Pa.)) ("[W]hether a 207(k) work period has been established is a jury question, but . . . 'a certain set of facts, if undisputed, may support only one inference . . . .  Under such circumstances, it would be appropriate for the court to decide the 207(k) issue by way of summary judgment.'"); *cf. Edison v. Reliable Ins. Co.*, 664 F.2d 1130, 1131 (9th Cir. 1981) (a determination of the legal effect of a contract's plain language is well suited for summary judgment if the intention of the parties is not disputed).  This is especially true here, since this case is scheduled for a court trial, and a trial is not necessary to clarify the record.

**1.2    Must an employer make a "public pronouncement" to adopt a Section 7(k) exemption?**

As explained in Section 1.1, to prove the existence of a Section 7(k) exemption, an employer must show that it "established a 7(k) work period and that the 7(k) work period was 'regularly recurring.'" *Adair*, 185 F.3d at 1060.  Whether Defendant meets these requirements will be discussed in greater detail in Sections 1.3 and 1.4.  For now, the Court turns to Plaintiffs' most vigorous argument, which is that an employer must take "affirmative action by public pronouncement to adopt the Section 7(k) exemption."  (Exemption Motion Opp'n 4:11-12; 5-10.)

Plaintiffs argue that "[p]ublic pronouncements adopting a 7k exemption include passing an ordinance, resolution, regulation, memorandum, or other affirmative declaration," and that Defendant did not make any such pronouncement here.  Absent one of these pronouncements, Plaintiffs believe, Defendant could not have adopted a Section 7(k) exemption.  Plaintiffs cite numerous cases to support their argument.  None of them persuade the Court that Section 7(k) requires a public pronouncement.

A public pronouncement requirement is absent from *Adair*, the leading Ninth Circuit case on point.  There, the court held that a public employer "established a 7(k) exemption when it specified the work period in [a collective bargaining agreement] and when it actually followed this period in practice." *Adair*, 185 F.3d at 1061.  The collective bargaining agreement language stated, "for purposes of complying with the Fair Labor Standards Act, the Patrol Division work period shall be eight days and the Detective Division seven days." *Id.* at 1060.  The court reasoned that the defendant "clearly" met its burden by "affirmatively adopt[ing] a work period and . . . follow[ing] that period in practice . . . ." *Id.* at 1062.  Plaintiffs seem to confuse "affirmatively adopt[ing] a work period" with "affirmatively making a public pronouncement adopting a work period." *Adair* does not support reading a "public pronouncement" requirement

10

1    into Section 7(k).

2         Nor does *McGrath v. City of Philadelphia*, 864 F. Supp. 466 (E.D. Pa.), another case

3    cited by Plaintiffs, support such a requirement.  In fact, the opposite is true.  In *McGrath*, the

4    court stated,

5

6              [t]he "establishment" of a 7(k) work period *may* be manifested by an
               appropriate public declaration of intent to adopt a work period of

7              between 7 and 28 days. . . .  Alternatively, a public employer may
               establish a 7(k) work period *even without making a public*

8              *declaration*, as long as its employees actually work a regularly
               recurring cycle of between 7 and 28 days.

9

10   *Id*. at 476 (citation omitted) (emphasis added).  With this language, *McGrath* clarified that a

11   "public declaration" is but one route to establishing a Section 7(k) work period, and not a

12   requirement.

13        The conclusion in *McGrath* is further buttressed by *Abbe v. City of San Diego*, No. 05-cv-

14   1629, 2007 WL 4146696, 2007 U.S. Dist. Lexis 87501 (S.D. Cal. 2007).  In *Abbe*, the plaintiffs

15   argued that a Section 7(k) exemption was not established because the memorandum of

16   understanding used the phrase "five day work week schedule" and "did not explicitly adopt a

17   Section 7(k) work period . . . ."  2007 WL 4146696, at *11.  The court disagreed and reasoned

18   that "[t]he plain language of 29 U.S.C. § 207(k), as well the regulations discussing the

19   exemption, indicate that the implementation of a work cycle that falls within Section 7(k) is

20   sufficient, regardless of whether the employer has the FLSA in mind at the time of implementing

21   the work cycle."  *Id*. at *12.  Thus, the court held that "the City Council's failure to explicitly

22   adopt a Section 7(k) exemption when given the opportunity [and] the MOU's failure to mention

23   the FLSA by name" did "not create a triable issue of fact concerning whether Defendant

24   established a work schedule that is compliant with Section 7(k)."  *Id*. at *13.

25        Plaintiffs argue that *Abbe* misconstrued the law, but in light of *Adair* and *McGrath*, *Abbe*

26

27                                                        11

28

1  is persuasive.  Defendant's failure to make a public pronouncement explicitly mentioning

2  Section 7(k) does not doom its exemption defense.

3       It's worth repeating that, to prove a Section 7(k) exemption, Defendant must show that it

4  "established a 7(k) work period and that the 7(k) work period was 'regularly recurring.'"  *Adair*,

5  185 F.3d at 1060.  Now that the Court has resolved preliminary issues, the Court turns to

6  whether Defendant meets these requirements.

7

8       **1.3     Did Defendant establish a Section 7(k) work period?**

9

10      Defendant argues that the MOUs between the Riverside Sheriffs' Association and

11 Defendant demonstrate that it established a Section 7(k) work period.  The Court agrees.

12      The MOUs state that "[t]he normal work period [for all Plaintiffs] shall be 10 working

13 days of 8 hours each.  The Department Head . . . may establish or eliminate a different bi-weekly

14 work period of 80 hours after giving one pay period written notice to the representative, if any,

15 of the employees affected."  The Court finds that this language establishes a 14 day work period

16 under Section 207(k), since it specifically identifies a "work period" of "10 working days," and

17 contemplates a change to a "different bi-weekly work period."

18      Plaintiffs disagree and suggest that Defendant did not adopt a 14 day work period because

19 "[t]here is no such written memorandum establishing a different bi-weekly work period."

20 (Exemption Motion Opp'n 10:8-9.)  The fallacy of this argument is Plaintiffs' failure to

21 recognize the significance of punctuation, especially the absence of commas.  The result here

22 might be different if the MOUs allowed for establishment of a "different, bi-weekly work

23 period."  If that were the case, the MOUs would imply that a "bi-weekly work period" would be

24 different than the current work period.  But that is not so.  The phrasing of the MOUs show that

25 Defendant adopted a bi-weekly work period, and allowed for a change from an existing bi-

26 weekly work period to a different one.

27

28                                            12

Plaintiffs also argue that no Section 7(k) exemption was adopted because "the MOU provides for a 'normal work period' of 10 'working days'" instead of "specify[ing] a 14-day work period." (Exemption Motion Opp'n 9:28-10:2.) This argument fails. Defendant is correct that a "normal work period" of "10 working days" is "entirely consistent with the 14-day work period adopted." (Exemption Motion Reply 6:21-24.) Moreover, Defendant's position is supported by common sense. The Court finds that Defendant established a work period of 14 days, with 4 non-working days every two weeks, leaving "10 working days."

Plaintiffs' schedules support this finding. The parties agree that the MOUs reflect a "normal work period" of 10 "working days" during which court services personnel and school resource officers work 2 schedules of 5 days, 8 hours per day. (Plaintiffs' Separate Statement of Genuine Issues in opposition to Exemption Motion ("EM-SGI") ¶¶ 6, 9.) And it is undisputed that the MOU for fields operations personnel shows that they work two 4 day, 10 hour schedules during a "normal work period" of 10 "working days." (EM-SGI ¶ 8.) And corrections personnel work a 7 day, 12 hour schedule in the same work period. (EM-SGI ¶ 4.) These schedules are consistent with a finding that Defendant established a 14 day work period.

In sum, Defendant established a Section 7(k) work period, the first of two requirements to demonstrate a Section 7(k) exemption. Thus, the Court turns to the second requirement.

### 1.4    Was the 14 day work period regularly recurring?

The parties also dispute whether the 14 day work period was regularly recurring. Defendant has the stronger argument. As established in Section 1.3, the different categories of Plaintiffs regularly worked during the work period either 2 schedules of 5 days, 8 hours per day, 2 schedules of 4 days, 10 hours per day, or 1 schedule of 7 days, 12 hours per day. (EM-SGI ¶¶ 4, 6, 8, 9.) Plaintiffs do not dispute these schedules, and do not submit any evidence to

13

contradict that they are regularly recurring.  Rather, Plaintiffs argue that they worked 7 day, not 14 day schedules.  But this is contradicted by the MOUs and Payroll Activity Reports, which establish a 14 day work period that was regularly recurring.

Defendant has shown that (1) it adopted a 14 day work period, and (2) this work period was regularly recurring.  Accordingly, the Court finds that Defendant established a Section 7(k) exemption.

### 1.5    Can Plaintiffs sustain a claim based on "gap time"?

Plaintiffs argue that, even if they are not entitled to overtime, their case does not end. They seek pay for "gap time," which is time "not covered by the overtime provisions because it does not exceed the overtime limit, and . . . not covered by the minimum wage provisions because, even though it is uncompensated, the employees are still being paid a minimum wage when their salaries are averaged across their actual time worked." *Adair*, 185 F.2d at 1062, n.6.

The asserted gap time claim here is for time worked between 80 and 86 hours per week. Plaintiffs claim the FLSA requires that Defendant compensate them at their regular rate of pay for such time worked.  Defendant argues that Plaintiffs' claim for gap time is not cognizable under the FLSA.  The Court agrees with Defendant.

Circuit courts are split on whether the FLSA provides for gap time claims.  A majority of courts to address the issue have held that gap time claims are not available under the FLSA. *Monahan v. County of Chesterfield*, 95 F.3d 1263, 1280 (4th Cir. 1996); *Hensley v. MacMillan Bloedel Containers, Inc.*, 786 F.2d 353, 357 (8th Cir. 1986); *United States v. Klinghoffer Bros. Realty Corp.*, 285 F.2d 487, 490 (2nd Cir. 1960).  Only one circuit court has held otherwise. *Lamon v. City of Shawnee*, 972 F.2d 1145, 1155 (10th Cir. 1992)

"The Ninth Circuit has not addressed the issue of whether a gap time claim may be

14

asserted under the FLSA, as distinguished from whatever proceedings may be available for breach of contract or under the collective bargaining agreement." *Maciel v. City of L.A.*, 569 F. Supp. 2d 1038, 1055 (C.D. Cal. 2008). But in declining to address the issue, the Ninth Circuit recognized that "[i]t is not clear that a gap time claim may be asserted under the FLSA, as distinguished from whatever proceedings may be available for breach of contract or under the collective bargaining agreement." *Adair*, 185 F.2d at 1062-63. And district courts in the Ninth Circuit have agreed with the majority position that the FLSA does not provide for gap time claims. *Maciel*, 569 F. Supp. 2d at 1055; *Abbe*, 2007 WL 4146696, at *14.

The Court agrees with the majority rule. While the FLSA allows for recovery of unpaid overtime and unpaid minimum wages, it does not provide for recovery under a gap time theory. The key provision states that "[a]ny employer who violates the provisions of section 206 or 207 of this Act shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). The Fourth Circuit explained:

> Logically, in pay periods without overtime, there can be no violation of section 207 which regulates overtime payment. Further, it is undisputed that all Appellees have been compensated well in excess of the statutory minimum wage for all hours worked; therefore, there can be no violation of section 206. Finding no violation of section 206 and no violation of section 207, we conclude that there can be no violation of the FLSA for failure to pay such pure gap time claims.

*Monahan*, 95 F.3d at 1280. The Court finds *Monahan* and other cases reaching similar conclusions persuasive.

Plaintiffs assert that the majority rule should not apply here because they are hourly, not salaried employees. The Court finds this argument unpersuasive. The FLSA creates claims for

unpaid overtime and unpaid minimum wages, not claims for unpaid regular wages.  29 U.S.C. § 216(b).  There is no argument that Defendant violated the minimum wage provisions.  It is true that the MOUs state that Plaintiffs will be compensated for their hours worked, but a remedy for Defendant's alleged violation of this agreement is a breach of contract claim or some other claim under the MOUs, and not a claim under the FLSA.

Plaintiffs cite the Ninth Circuit's proclamation that "[i]t is axiomatic, under the FLSA, that employers must pay employees for all 'hours worked.'"  *Alvarez v. IBP, Inc.*, 339 F.3d 894, 902 (9th Cir. 2003).  This is no doubt true.  But a violation of this axiom is not established if an employee's number of hours worked divided by wages received is above the FLSA's minimum wage requirements.  *Maciel*, 542 F. Supp. 2d at 1097.

### 1.6     Other Considerations

Plaintiffs also incorrectly suggest that the Court should find that all time reported, including holiday time, and not just time worked, should be counted toward the 86 hour overtime threshold.  This argument is unpersuasive in light of the DOL regulation providing that "vacation, holiday, [and] illness" time is not included in the regular rate of pay, and "since such payments are not made as compensation for the employee's hours worked in any workweek, no part of such payments can be credited toward overtime compensation due under the [FLSA]."  29 C.F.R. 778.216.

Further, the parties dispute when the applicable claims period began.  Defendant argues that it depends on when each particular Plaintiff joined the action.  Plaintiffs believe that for all Plaintiffs it is the date the Complaint was filed.  The Court does not consider this issue part of the motions presented, and in light of the insufficient briefing on the issue, the Court declines to rule on it.

16

**1.7     Conclusion**

The Court GRANTS the Exemption Motion.

## 2.     OFFSETS MOTION

Defendant's second motion for partial summary judgment argues that it "is entitled to offset certain payments already made to the plaintiffs as part of the calculation of any potential damages in this action." (Offsets Motion 1:3-6.)  According to Defendant, it is entitled to credits for two types of payments: (1) holiday pay received when working on holidays ("HLR"), and (2) contractual overtime under the MOUs.

The FLSA requires employers to pay overtime "at a rate not less than one and one-half times the regular rate at which" employees are employed.  29 U.S.C. § 207(a)(1).  The FLSA excludes from the definition of employees' "regular rate" of pay "extra compensation provided by a premium rate paid for work . . . on Saturdays, Sundays, holidays, . . . or on the sixth or seventh day of the workweek, where such premium rate is not less than one and one-half times the rate . . . for like work performed in nonovertime hours on other days."  29 U.S.C. § 207(e)(6).  It also excludes "extra compensation provided by a premium rate paid to the employee, in pursuance of an applicable employment contract or collective-bargaining agreement, for work outside of the hours established in good faith by the contract or agreement as the basic, normal, or regular workday . . . or workweek . . . , where such premium rate is not less than one and one-half times the rate established . . . by the contract or agreement . . . ."  29 U.S.C. § 207(e)(7).

The FLSA goes on to state that employers are entitled to credits for extra compensation in some situations.  It provides that extra compensation paid under Section 207(e)(6) and (7) "shall

be creditable toward overtime compensation payable pursuant to this section." 29 U.S.C. §

207(h)(2). *See also Kohlheim v. Glynn County, Ga.*, 915 F.2d 1473, 1474 (11th Cir. 1990)

(finding that "the county is entitled to set off all previously paid overtime premiums against any

compensation found to be due and owing under [Section 207]"). Defendant believes it is entitled

to credits for HLR pay and contractual overtime under this provision.

### 2.1    HLR Pay

When Plaintiffs work on holidays, they receive payments for 12 "paid holiday hours" in

addition to the regular pay plus overtime they receive for hours actually worked. (Defendant's

Statement of Undisputed Facts in Support of Offsets Motion ("OM-SUF") ¶¶ 8-10.) So if

Plaintiffs worked their normal hours on holidays, they actually received 2 ½ times their regular

rate. Since this overtime pay is not mandated by the FLSA, Defendant contends that it must be

credited against any unpaid overtime to which Plaintiffs are entitled.

Plaintiffs disagree. They contend that, to receive a credit for HLR pay, Defendant must

prove that it "paid plaintiffs 'HLR' pay based on each holiday hour worked," and not in a lump

sum. (Opposition to Offsets Motion 8:13-14.) Since it is undisputed that Defendant paid

Plaintiffs for 12 hours of HLR time when they worked holidays regardless of the actual number

of hours worked, Plaintiffs argue that no credit can be given here. The Court agrees with

Plaintiffs.

*Dooley v. Liberty Mutual Ins. Co.*, 369 F. Supp. 2d 81 (D. Mass 2005), is analogous. In

*Dooley*, certain employees received, in addition to their regular rate, a "*per diem* payment for

working [Saturdays]." *Id*. at 83. The defendant argued that it was entitled to offset these

payments against any FLSA overtime it might owe the plaintiffs. *Id*. at 84. The court disagreed

and found that the payments "cannot qualify as 'premium pay' subject to exclusion from the

1  regular rate calculation." *Id*. at 85.

2  But even more compelling than the facts of *Dooley* are the persuasive authorities on

3  which the case relies.  The Court looked to the DOL's regulations interpreting Section 207.  *See*

4  *O'Brien v. Town of Agawam*, 350 F.3d 279, 298 (1st Cir. 2003) ("[T]he Secretary's

5  interpretations have the power to persuade, if lacking power to control, as they constitute a body

6  of experience and informed judgment to which courts and litigants may properly resort for

7  guidance.)  One such regulation states,

8

9  > [a] premium in the form of a lump sum which is paid for work
> performed during overtime hours without regard to the number of
10 > overtime hours worked does not qualify as an overtime premium
> even though the amount of money may be equal to or greater than
11 > the sum owed on a per hour basis.

12 29 C.F.R. § 778.310.  Another explains that, "[s]ince any extra compensation in order to qualify
13 as an overtime premium must be provided by a premium rate per hour . . . lump sum premiums
14 which are paid without regard to the number of hours worked are not overtime premiums and
15 must be included in the regular rate."  29 C.F.R. § 778.207(b).

16 While Plaintiffs discuss *Dooley* and these regulations in their Opposition, Defendant
17 dismissively responds that these authorities "have no application to the facts or issues of this
18 case."  (Offsets Motion Reply 7:16-17.)  Defendant is wrong.  These authorities interpret Section
19 207(e)(6), the basis for Defendant's request for offsets based on HLR pay.  Thus, they guide the
20 Court's analysis of the issue.

21 But Defendant's argument does not stop there.  Defendant also mistakenly asserts that the
22 plain terms of 29 U.S.C. § 207(e)(6) compel a ruling in its favor.  Since district court cases from
23 Massachusetts and the DOL's interpretive regulations are not binding authority, the Court would
24 not follow them if they contradicted the plain terms of Section 207(e)(6).  But they don't.

25

26

27  19

28

Section 207(e)(6) states that premium compensation "paid for work" on holidays is creditable, and the *Dooley* court correctly reasoned that "the statutory term 'premium rate' refers to an hourly rate of pay, rather than a lump sum." 369 F. Supp. 2d at 84. Further, Section 207(e)(6) states that the "premium rate" must be "not less than one and one-half times the rate [for] nonovertime hours . . . ," implying that the premium rate must be a factor of the regular hourly rate. This language is inconsistent with Defendant's position that lump sum payments are creditable under Section 207(e)(6).

The Court DENIES the Offsets Motion as it concerns HLR pay.

## 2.2   Contractual Overtime

Defendant next argues that the Court should offset "the premium portion of all overtime paid to Plaintiffs" under the MOUs. (Offset Motion Reply 8:11-12 (emphasis removed).) Here, Defendant's argument prevails.

Plaintiffs disagree, but their arguments miss the point. First, Plaintiffs argue that Defendant must establish factual issues at trial to be entitled to a credit for contractual overtime. They point to three issues in particular that they believe preclude partial summary judgment:

> (1) What the basic, normal, or regular workday established by the MOU is for each plaintiff or classification of plaintiffs;
> (2) Whether all payments the County paid plaintiffs for working less than 86 hours per pay period were paid pursuant to the MOU for work outside of plaintiffs' hours established in good faith by the MOU as the basic, normal, or regular workday or workweek not exceeding 86; and
> (3) Whether the rate of pay for 'all overtime payments less than 86 hours per pay period' was at least one and one-half the rate established by the MOU for like work performed during such workday or 80 hour workweek.

20

(Offsets Motion Opp'n 14:11-26.)

Plaintiffs attempt to create disputed issues of fact where none exists.  A review of the evidence submitted reveals no dispute about "what the basic, normal, or regular workday established by the MOU is."  The terms of the MOUs are undisputed and the parties also "stipulate to the accuracy of the data reported on the Payroll Activity Reports."  (Offsets Motion Reply 8:14-17; Offsets Motion Opp'n 5:12-18.)  The MOUs and Payroll Activity Reports discuss Plaintiffs' normal workdays, and Plaintiffs introduce no evidence to contradict these documents.  (*See* Defendant's Reply Statement of Uncontroverted Facts in Support of Offsets Motion ("Reply SUF") ¶ 1; EM-SUF ¶¶ 3-10.)  Further, Plaintiffs admit that the Payroll Activity Reports reflect payments to Plaintiffs, and there is no dispute that payments for hours worked between 80 and 86 hours were paid under the MOUs for work outside of Plaintiffs' normal hours.  (Offsets Motion Opp'n 5:25-28.)  And finally, there is no reason to believe that the rate of pay for "overtime payments less than 86 hours per pay period" is less than "one and one-half the rate established by the MOU for like work performed during such workday."  (Offsets Motion Opp'n 14:11-26.)  Thus, there is no disputed issue of fact precluding partial summary judgment concerning contractual overtime.

Plaintiffs also argue that "'court pay' is not section 207(e)(7) premium pay that may be credited . . . because the County fails to establish 'court pay' is paid because a deputy is required to attend court outside of his regular workday and it is paid regardless of whether the court time took place during the regular workday."  (Offsets Motion Opp'n 16:16-21.)  Defendant sufficiently rebuts this argument by establishing that "court pay" is for court appearances when Plaintiffs are "off duty."  (Reply SUF ¶ 3.)

Ultimately, Plaintiffs' reliance on *Howard v. City of Springfield*, 274 F.3d 1141, 1146 (7th Cir. 2001), is misplaced, as Plaintiffs admit that "the court [there] relied upon the absence of any language in the CBA establishing certain hours as the basic, normal or regular workday, as

well as the fact that premium pay for court time occurred regardless of whether it took place during the regular workday." (Offsets Motion Opp'n 15:28-16:5.) Since those considerations are absent here, the Court agrees with Defendant that it is entitled to offsets for the premium portion of contractual overtime.

### 2.3    Conclusion

The Offsets Motion is GRANTED IN PART and DENIED IN PART.

## 3.    DE MINIMIS MOTION

Defendant next contends that the amounts of time Plaintiffs spent on certain pre/post-shift readiness activities are not compensable because they are de minimis.

"As a general rule . . . employees cannot recover for otherwise compensable time if it is *de minimis*." *Lindow v. United States*, 738 F.2d 1057, 1061-62 (9th Cir. 1984); *see also Alvarez*, 339 F.3d at 903-04. "When the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours[,] such trifles may be disregarded[, for] split-second absurdities are not justified by the actualities or working conditions or by the policy of the [FLSA]." *Anderson v. Mt. Clemens Pottery Co.*, 328 US. 680, 692 (1946).

"Most courts have found daily periods of approximately 10 minutes de minimis even though otherwise compensable." *Lindow*, 738 F.2d at 1062; *see also Green v. Planters Nut & Chocolate Co.*, 177 F.2d 187, 188 (4th Cir. 1949) (finding 10 minutes to be de minimis). While the daily time involved in an activity is the chief concern in determining whether it is de minimis, courts also consider "(1) the practical administrative difficulty of recording the additional time; (2) the aggregate amount of compensable time; and (3) the regularity of the

22

1   additional work." *Lindow*, 738 F.2d at 1063.

2        Since 10 minutes is the standard threshold for determining whether something is de

3   minimis, the Court must determine whether time donning and doffing of uniform should be

4   aggregated with or separated from time donning and doffing of equipment.  If aggregation is

5   appropriate, all deputies spend over 10 minutes doing pre/post-shift readiness activities.  But if

6   uniform and equipment must be separated, most of the individual activities are de minimis.

7        Ninth Circuit authority shows that time concerning uniforms must be separated from time

8   concerning equipment.  In *Alvarez v. IBP, Inc.*, 339 F.3d 894 (9th Cir. 2003), the Court separated

9   "time spent donning and doffing non-unique protective gear such as hardhats and safety

10  goggles" from time spent with other clothing items and found it de minimis as a matter of law.

11  *Id*. at 903.  The Court stated:

12

13          While we do not suggest that the donning of such gear is 'trifling,'

14          *see Mt. Clemens*, 328 U.S. at 692, we do believe that neither FLSA
        policy nor 'the actualities' of plaintiffs' working conditions justify
        compensation for the time spent performing these tasks.

15          Accordingly, donning and doffing of all protective gear is integral
        and indispensable to 'the principal activities for which [the plaintiffs]

16          are employed,' *Steiner*, 350 U.S. at 256, and generally compensable.
        However, the specific tasks of donning and doffing of non-unique

17          protective gear such as hardhats and safety goggles is
        noncompensable as de minimis.  *Lindow*, 738 F.2d at 1061.

18

19  *Id.* at 904.  With the benefit of the jury's Phase One verdict and subsequent briefing, the Court

20  finds that *Alvarez* governs Plaintiffs' case.  The Court will not disregard *Alvarez* by aggregating

21  the time spent donning and doffing uniforms with the time spent donning and doffing equipment.

22       Plaintiffs argue that the *Lindow* factors weigh against a finding of de minimis.  To

23  reiterate, the de minimis factors besides daily time spent doing an activity are: "(1) the practical

24  administrative difficulty of recording the additional time; (2) the aggregate amount of

25  compensable time; and (3) the regularity of the additional work."  *Lindow*, 738 F.2d at 1063.

26

27

28

Here, the aggregate compensable time and regularity of additional work weigh against Defendant's de minimis argument.  But Defendant establishes that it would be administratively difficult to record the small increments of additional time.  (De Minimis Motion Reply 3:24-5:22.)  This, combined with the fact that all Plaintiffs spent under 10 minutes donning and doffing uniforms and some spent under 10 minutes donning and doffing equipment, compels the Court to reject Plaintiff's argument.

Here, the jury found that all Plaintiffs spent 9 minutes donning and doffing their uniforms, sworn corrections deputies spent 6 minutes donning and doffing equipment, and non-sworn corrections deputies spent 2 minutes donning and doffing equipment.  The Court finds these activities de minimis as a matter of law.  Patrol, court services, and corrections transportation deputies spent 11 minutes donning and doffing equipment, which the Court finds to be not de minimis.  And finally, Patrol deputies spent 13 minutes preparing a patrol car, which is also not de minimis.

The Court GRANTS the De Minimis Motion.

## 4.    BRIEFING MOTION

Defendant's fourth and final motion for partial summary judgment seeks "to resolve the issue of briefing start times at each of the ten patrol stations based on the trial evidence elicited by both parties on this issue" in Phase One.  (Briefing Motion 1:3-5.)  Plaintiffs argue that the Court should not decide the Briefing Motion at this time.  The Court agrees.

The Court and the parties contemplated that Defendant would present three affirmative defenses in Phase Two of the trial, and that the parties would address the issues of damages at this time.  (Order Re Phase Two of Trial, March 31, 2009.)  Defendant did not suggest that it would seek summary judgment on the issue of briefing times.

24

Nonetheless, it filed the Briefing Motion, suggesting that the Court may determine the issue on summary judgment. Defendant points to the facts that Phase Two will be a court trial and testimony was presented at Phase One concerning briefing start times. Defendant argues, "[t]hat there was a clear understanding among the parties and the Court, that the issue of briefing start times would be determined at the first, substantive phase of trial is clearly reflected in the extensive discussion regarding jury instructions." (Briefing Motion Reply 1:17-20.) But it is plausible that the testimony in Phase One is insufficient to decide the issue of briefing start times. This possibility is supported by Plaintiffs' offering of evidence "that shift briefings were conducted at the start of shift at Palm Desert, Hemet, Jurupa Valley, Indio, Cabazon/Banning, Blythe/Colorado River, Moreno valley, Perris, and Southwest Stations . . . ." (Briefing Motion Opp'n 13:10-14.)

Accordingly, the Court finds that it would be inappropriate to grant the Briefing Motion. The Briefing Motion is DENIED.

**<u>DISPOSITION</u>**

25

The Exemption Motion is GRANTED.  The Offsets Motion is GRANTED IN PART and DENIED IN PART.  The De Minimis Motion is GRANTED.  The Briefing Motion is DENIED.

IT IS SO ORDERED.

DATED: October 20, 2009

_____
Andrew J. Guilford
United States District Judge