1  Brian P. Walter, Bar No. 171429
   bwalter@lcwlegal.com
2  Laura J. Kalty, Bar No. 199520
   lkalty@lcwlegal.com
3  LIEBERT CASSIDY WHITMORE
   A Professional Law Corporation
4  6033 W. Century Blvd., Suite 500
   Los Angeles, California 90045
5  Telephone:  (310) 981-2000
   Facsimile:   (310) 337-0837
6
7  Attorneys for Defendant
   COUNTY OF RIVERSIDE

8              **UNITED STATES DISTRICT COURT**

9       **CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION**

10

11  RONALD FARRIS, ET AL.,                 Case No.  CV05-06166 AJG CTx

12            Plaintiffs,                   Assigned To Judge Andrew J. Guilford
                                            Courtroom:  10-D
13     v.
                                            **DEFENDANT COUNTY OF**
14  COUNTY OF RIVERSIDE,                    **RIVERSIDE'S SUPPLEMENTAL**
                                            **BRIEF RE: HOW THIS COURT**
15            Defendant.                    **SHOULD PROCEED IN LIGHT OF**
                                            **THE NINTH CIRCUIT'S HOLDING**
16                                          **IN *BAMONTE V. CITY OF MESA***
                                            **THAT DONNING AND DOFFING**
17                                          **OF POLICE UNIFORMS AND**
                                            **EQUIPMENT IS NOT A**
18                                          **COMPENSABLE ACTIVITY**

19                                          Phase One Trial Date:  May 6-21, 2008
                                            Jury Verdict:            May 22, 2008
20                                          Phase Two Trial Date: Nov. 3-4, 2009

21

22

23

24

25

26

27

28
                                            Defendant County of Riverside's Supplemental
                                            Brief re: *Bamonte v. City of Mesa*

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

1

# TABLE OF CONTENTS

2
Page

3   I.     INTRODUCTION ................................................................................... 1

4   II.    THE NINTH CIRCUIT'S HOLDING IN BAMONTE REQUIRES A
        FINDING THAT DONNING AND DOFFING OF POLICE
5       UNIFORMS AND EQUIPMENT IS NOT COMPENSABLE ..................... 2

6          A.   Prior to *Bamonte*, There Were Inconsistent Positions in the
             Ninth Circuit Regarding Whether Time Spent Donning and
7            Doffing Uniforms and Equipment Was Compensable Under the
             FLSA ......................................................................................... 2

8          B.   In *Bamonte*, the Ninth Circuit Agreed with the Abbe Court and
             the DOL and Imposed a Location Requirement for Determining
9            Compensability of Donning and Doffing Uniforms and
             Equipment ................................................................................. 3

10         C.   Plaintiffs Had the *Option and Ability* to Don and Doff Their
             Uniforms and Equipment Off of Department Premises ....................... 5

11         D.   There was No *De Facto* Policy Which Required Deputies to
             Dress at Work; Deputies Did So Because of *Personal*
12           *Preference* ................................................................................. 7

13  III.   THE HOLDING IN *BAMONTE V. CITY OF MESA* PRECLUDES
        ANY LIABILITY FOR DEFENDANT FOR PLAINTIFFS'
14      DONNING AND DOFFING CLAIM ..................................................... 9

15         A.   This Court Should Reconsider its Order Denying the County's
             Motion for Summary Judgment, and Grant Judgment for the
16           County as to Plaintiffs' Donning and Doffing Claim ........................ 10

17              1.   The Court Committed a Clear Error of Law in Holding
                 that the Donning and Doffing of Plaintiffs' Uniform and
18               Protective Gear Was Done for the Benefit of the
                 Employer ......................................................................... 10

19              2.   The Court Made an Error of Law in Finding that the
                 Nature of the Uniform, and in Particular its Possible
20               Command Presence, Made it Necessary to the Execution
                 of Law Enforcement Duties ............................................. 12

21         B.   In the Alternative, Judgment Should be Entered in Favor of the
             County as to the Unpaid Overtime Claim for Donning and
22           Doffing Uniforms and Equipment, or this Court Should Grant a
             Partial New Trial ........................................................................ 14

23  IV.    CONCLUSION ..................................................................................... 15

24

25

26

27

28

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

1

# TABLE OF AUTHORITIES

2

Page

3

**Cases**

4
5
*Abbe v. City of San Diego*
(S.D.Cal. 2007) 2007 WL 4146696.........................................................................3, 4, 13, 14

6
*Ace v. Aetna Life Ins. Co.*
139 F.3d 1241 (9th Cir. 1998) .............................................................................14

7
8
*Alvarez v. IBP, Inc.*
339 F.3d 894 (9th Cir. 2003) ......................................... 1, 2, 3, 4, 10, 11, 13, 14, 15

9
*Ballaris v. Wacker Siltronic Corp.*
370 F.3d 901 (9th Cir. 2004) .................................................................1, 3, 4, 14

10
11
*Bamonte v. City of Mesa*
No. 08-16206, --- F.3d ---, 2010 WL 1131492 (9th Cir. March 25, 2010)
................................................................ 1, 2, 1, 2, 3, 4, 5, 8, 9, 10, 11, 12, 13, 14

12
13
*Gilbrook v. City of Westminster*
177 F.3d 839 (9th Cir. 1999) ...............................................................................14

14
*Gorman v. Consolidated Edison Corp.*
488 F.3d 586 (2d Cir. 2007) ......................................................................13, 14

15
16
*Landes Constr. Co. v. Royal Bank of Canada*
833 F.2d 1365 (9th Cir. 1987) ..........................................................................14

17
*Lemmon v. City of San Leandro*
2007 WL 4326743 (N.D.Cal. Dec. 7, 2007)................................................12, 14

18
19
*Martin v. City of Richmond*
504 F.Supp.2d 766 (N.D.Cal. 2007)..................................................................14

20
*Murphy v. City of Long Beach*
914 F.2d 183 (9th Cir. 1990) ...............................................................................14

21
22
*School Dist. No. 1J, Multnomah County v. ACandS, Inc.*
5 F.3d 1255 (9th Cir. 1993) ...............................................................................10

23
*Steiner v. Mitchell*
350 U.S. 247 (1956)...................................................................1, 2, 4, 11, 13, 14

24
25
*Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*
321 U.S. 590 (1944).............................................................................................2

26
*Wilson v. Arlington Co. v. Prudential Ins. Co.*
912 F.2d 366 (9th Cir. 1990) ...............................................................................10

27

28

//

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

Defendant County of Riverside's Supplemental
Brief re *Bamonte v. City of Mesa*

1

**TABLE OF AUTHORITIES**
**(continued)**

2

3

Page

**Rules**

4  Federal Rules Civil Procedure Rule 50(a) ................................................................ 14

5  Federal Rules Civil Procedure Rule 50(b) ............................................................... 14

6  Federal Rules Civil Procedure Rule 59 ................................................................... 14

7  Federal Rules Civil Procedure Rule 59(e) .............................................................. 10

8  Federal Rules Civil Procedure Rule 60(b) ............................................................. 10

9  Local Rule 7-18 .................................................................................................. 1, 10

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

Defendant County of Riverside's Supplemental
Brief re *Bamonte v. City of Mesa*

1    As invited by the Court in its Minute Order dated March 25, 2010,
2    Defendant County of Riverside hereby submits its Supplemental Brief to address
3    how this Court should proceed in light of the Ninth Circuit Court of Appeal's
4    holding in *Bamonte v. City of Mesa*, No. 08-16206, --- F.3d ----, 2010 WL
5    1131492 (9th Cir. March 25, 2010), that the time police officers spend before and
6    after their paid shifts donning and doffing their police uniforms and related
7    protective gear or equipment is not compensable under the FLSA, so long as the
8    officers have the *option and ability* to don and doff their uniform and gear off of
9    the employer's premises.

10    In this case, the evidence offered at summary judgment and at trial
11    unequivocally established that Plaintiffs had the *option and ability* to don and doff
12    their uniform and gear off of the premises based on the principles set forth in
13    *Bamonte*. Accordingly, as part of this Supplemental Brief, the County includes a
14    discussion of the anticipated law and motion matters which will be necessary based
15    on the recent change in (clarification of) controlling law.[1]  First, Defendant will be
16    filing a Motion for Reconsideration, respectfully asking this Court to reconsider its
17    previous order (dated January 30, 2008) denying the County's Motion for Partial
18    Summary Judgment as to Plaintiffs' claim for unpaid overtime for donning and
19    doffing their uniforms and equipment.  Pursuant to Federal Rules of Civil
20    Procedure, Rules 59(e) and 60(b), and Local Rule 7-18, this Motion will be made
21    on the grounds that there has been an intervening change in controlling law,
22    specifically, the Ninth Circuit's opinion in *Bamonte v. City of Mesa*.

23    Second, or alternatively, the County will be renewing its Motion for
24    Judgment as a Matter of Law pursuant to Rule 50(b) of the Federal Rules of Civil
25    Procedure.  Specifically, the County will seek entry of judgment on Plaintiffs'
26    overtime claim for donning and doffing their uniforms and equipment.  Plaintiffs

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

---

27    [1] Of course, prior to filing its motion(s), the County would wait for any direction or insights the Court may offer on
28    how to proceed, including any Order the Court may issue in response to the parties' supplemental briefing (or in
      response to the parties' Phase Two briefing).

1   have been heard on all issues and, as a matter of law as set forth in *Bamonte v. City*

2   *of Mesa,* there is no legally sufficient evidentiary basis for a reasonable jury to find

3   in favor of Plaintiffs on this claim.

4   　　　Third, and as a further alternative, the County will move for a partial new

5   trial pursuant to Rule 59 of the Federal Rules of Civil Procedure.  If the Court

6   denies the County's Renewed Motion for Judgment as a Matter of Law, the County

7   should nonetheless be granted a partial new trial as to Plaintiff's donning and

8   doffing claim only.  The County's Motion for Partial New Trial will be made on

9   the following grounds:

10   　　　1)　　The verdict that the donning/doffing of uniforms and equipment is

11   integral and indispensable to Plaintiffs' principal law enforcement activities is

12   against the clear weight of the evidence, as Plaintiffs did not prove that they were

13   required to dress on Department premises; and,

14   　　　2)　　The Court erred in not instructing the jury that donning/doffing is not

15   a principal activity where an employee changes into his/her uniform and gear at the

16   workplace for the employee's own convenience.

17

18

19   Dated: April 8, 2010　　　　　　　　　　LIEBERT CASSIDY WHITMORE

20

21   　　　　　　　　　　　　　　　　　　By: _____

22   　　　　　　　　　　　　　　　　　　　　Brian P. Walter
　　　　　　　　　　　　　　　　　　　　　Laura J. Kalty
23   　　　　　　　　　　　　　　　　　　　　Attorneys for Defendant
　　　　　　　　　　　　　　　　　　　　　COUNTY OF RIVERSIDE

24

25

26

27

28

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

# I.   INTRODUCTION

Since the time of the Ninth Circuit's 2003 decision in *Alvarez v. IBP, Inc.* (if not before), there has been a swarm of cases brought by employees against their employers claiming that because their employment required a uniform, they must be paid for the time spent putting on and taking off such uniform.  In particular, public safety officers have gone through incredible efforts to analogize that the equipment they wear for protection -- a bullet-resistant vest, a Sam Browne belt, gun and badge -- is similar to the specialized equipment required to protect workers in a battery plant dealing with toxic materials, a meat processing plant and a silicon wafer manufacturing plant. *See, Steiner v. Mitchell,* 350 U.S. 247 [76 S.Ct. 33, 100 L.Ed. 267] (1956); *Alvarez v. IBP, Inc.,* 339 F.3d 894 (9th Cir. 2003); *Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901 (9th Cir. 2004).

With its decision in *Bamonte v. City of Mesa,* No. 08-16206, --- F.3d ----, 2010 WL 1131492 (9th Cir. March 25, 2010), the Ninth Circuit has provided employers and courts with a definitive test -- does the employee have the *option and ability* to dress in his/her uniform and equipment away from the employer's premises?  If the answer is yes, then the donning and doffing activities are not compensable, because they are not integral and they are not necessary to the principal work performed.

In this case, the answer is yes -- deputies at the Riverside County Sheriff's Department had the *option and ability* to dress in their uniforms and equipment away from Department premises and thus, as a matter of law, the donning/doffing of their uniform and gear was not compensable work under the FLSA.  The binding Ninth Circuit precedent established in the *Bamonte* decision compels this Court to enter judgment in favor of the County, and against Plaintiffs, as to the claim for donning and doffing of police uniforms and equipment.

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

II.   **THE NINTH CIRCUIT'S HOLDING IN *BAMONTE* REQUIRES A FINDING THAT DONNING AND DOFFING OF POLICE UNIFORMS AND EQUIPMENT IS NOT COMPENSABLE**

Prior to *Bamonte*, there was inconsistency among the District Courts in the Ninth Circuit regarding the compensability of donning and doffing activities for police officers.  The *Bamonte* decision settles this inconsistency and delineates the applicable legal standard for the compensability of donning and doffing activities for public safety officers.  Therefore, the *Bamonte* decision reflects a change of law that occurred after the time of this Court's Order denying the County's Motion for Summary Judgment, and after the jury's verdict, but before any final judgment has been entered in this action.  Accordingly, applying the holding in *Bamonte* to the facts in this case, the Court cannot award any damages for the donning and doffing of uniforms and equipment because these activities are not compensable.

A.   **Prior to *Bamonte*, There Were Inconsistent Positions in the Ninth Circuit Regarding Whether Time Spent Donning and Doffing Uniforms and Equipment Was Compensable Under the FLSA**

Under the FLSA, employers must pay employees for all hours "worked." *Alvarez, supra* at 902.  The Supreme Court defines "work" as "physical or mental exertion…controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer." *Tennessee Coal, Iron & R. Co. v. Muscoda Local No.* 123, 321 U.S. 590, 598 (1944).  The Portal-to-Portal Act "relieves an employer of responsibility for compensating employees for activities which are preliminary or postliminary to the principal activity or activities of a given job." *Alvarez, supra* at 902.  "Preliminary" and "postliminary" activities are compensable only if the activities are an "integral and indispensable" part of the principal activities for which the workers are employed. *Steiner, supra* at 256.

Prior to the Ninth Circuit's decision in *Bamonte*, the court addressed the issue of compensability of donning and doffing activities in several notable cases.[2]  The

---

[2] In *Alvarez v. IBP, Inc.*, employees of a meat production plant sought compensation under the FLSA for time spent elaborately donning and doffing burdensome protective gear. *Alvarez, supra* at 898. The Ninth Circuit delineated a bipartite test:  to be "integral and indispensable," an activity must be: (1) necessary to the principal work performed,

Defendant County of Riverside's Supplemental
Brief re *Bamonte v. City of Mesa*

1    Department of Labor also addressed the issue of compensability for donning and
2    doffing of clothing and gear under the FLSA.  The DOL's longstanding position is
3    that if employees have *the option and the ability* to change into the required gear at
4    home, changing into that gear is not a principal activity (i.e., not compensable under
5    the FLSA), even when it takes place at the employer's premises.  The DOL clarified
6    this in a May 31, 2006 wage and hour advisory memorandum that interpreted the
7    Supreme Court's decision in *IBP v. Alvarez. Wage &Hour Adv. Mem.*No.2006-2 at 3.

8           **B.    In *Bamonte*, the Ninth Circuit Agreed with the *Abbe* Court and the
                     DOL and Imposed a Location Requirement for Determining
9                    Compensability of Donning and Doffing Uniforms and Equipment**

10          In *Bamonte*, City of Mesa police officers sought compensation for the time
11   they spent donning and doffing their uniforms and related gear. *Bamonte, supra* at 1.
12   Officers were provided with a locker room at the police station and it was their
13   *preference* to don and doff their uniform and related gear in the locker room, based
14   on seven considerations.[3]  *Id.*  Indeed, there was no requirement imposed by their
15   employer to don or doff at their employer's premises.  The district court granted the
16   City of Mesa's motion for summary judgment, holding that because the plaintiffs had
17   the option and ability to don and doff their uniforms and gear at home, the activity of
18   donning and doffing uniforms and gear at the workplace was not compensable.  *Id.*

19          On appeal, the Ninth Circuit relied on the three-stage inquiry for determining

20   _____

21   and (2) done for the benefit of the employer. *Id.* at 902-903. The Ninth Circuit emphasized that the location of the
     donning and doffing activities is a critical factor for determining whether the activities are necessary to the principal
22   work performed, because in *Alvarez*, "the donning and doffing of the gear on the [employer's] plant's premises is
     required by law, by rules of [the employer], and by the nature of the work...." *Id.* at 903.
23        In *Ballaris, supra* at 903, the Ninth Circuit again addressed the compensability of time spent donning and doffing
     protective gear in a factory setting.  As in *Alvarez*, the Ninth Circuit emphasized the importance of the location of the
24   donning and doffing activities. *Id.* at 911.  The employer required employees to change into and out of their uniforms
     "at the plant, and only at the plant, in the normal course of the employees' jobs." *Id.*  Furthermore, the Ninth Circuit
25   found the uniforms donned and doffed at the employer's premises was for the employer's benefit because the "clean"
     uniforms (as a result of being donned and doffed in locker rooms at the employer's premises) limited potential
26   contamination, thereby assisting the employer in ensuring the quality of the silicon manufactured at the plant. *Id.*
     [3] (1) the risk of loss or theft of uniforms and gear at home; (2) potential access to gear by family members or guests;
     (3) distractions at home that might interfere with the donning process; (4) safety concerns with performing firearm
27   checks at home; (5) discomfort associated with wearing the gear while commuting; (6) the increased risk of being
     identified as a police officer while off-duty; and (7) potential exposure of family members to contaminants and bodily
28   fluids.

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA  90045

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

1    compensability of donning and doffing activities, which it previously articulated in

2    *Alvarez. Bamonte, supra* at 5.  The first stage addresses whether the donning and

3    doffing activities constitute "work" that is controlled or required by the employer.  *Id.*

4    The second stage addresses whether the donning and doffing activities are "integral

5    and indispensable" duties, i.e. activities that are necessary to the principal work

6    performed *and* done for the benefit of the employer.  *Id.*  The third stage addresses

7    whether the donning and doffing activities were *de minimis*.  *Id.*  The Ninth Circuit

8    focused its inquiry on the second stage in light of the plaintiffs' argument that *Alvarez*

9    could be interpreted as supporting a finding of compensability as a function of the

10   employer's requirement that officers wear a uniform and related gear.  *Id.*

11         Ultimately, the Ninth Circuit followed the position of the *Abbe* court and held

12   that the relevant inquiry is not whether the nature of the job requires donning and

13   doffing of the uniform and gear, but rather whether the nature of the job required the

14   *process* of donning and doffing to occur on the employer's premises.  *Bamonte, supra*

15   at 8.  Specifically, the Ninth Circuit found that the facts in *Bamonte* were

16   "diametrically opposed" to those facts in *Steiner, Alvarez,* and *Ballaris*.  *Id.* at 6.

17   Namely, in those cases, the employers *mandated* donning and doffing at the

18   employer's premises.  *Id.*  The *Bamonte* plaintiffs did not, however, identify a law,

19   rule, regulation or obligation mandating on-premises donning and doffing.  *Id.*

20   Moreover, the Ninth Circuit determined that the on-premises donning and doffing of

21   the Mesa officers was for their benefit and not their employer's benefit, finding that

22   there was no evidence that the gear the plaintiffs donned and doffed is less effective if

23   it is donned away from the employer's premises.  *Id.*

24         Therefore, in *Bamonte,* the Ninth Circuit imposed a location requirement for

25   determining whether donning and doffing public safety uniforms and related gear is

26   compensable under the FLSA.[4]  *Bamonte, supra* at 8-11.  Specifically, if officers and

27   ───────────────
     [4] The Ninth Circuit also noted that a determination that the location of donning and doffing controls compensability is
28   consistent with the Congressional intent behind the Portal-to-Portal Act – to limit unexpected and substantial liability
     for preliminary and postliminary activities. *Bamonte, supra* at 10.

1   deputies have the *option and ability* to don and doff their uniforms and equipment off

2   of the employer's premises, then their donning and doffing activities, even if

3   performed at the employer's premises due to personal preference, are not

4   compensable as "work" under the FLSA. *Id.*

5
   **C.** **Plaintiffs Had the *Option and Ability* to Don and Doff Their
     Uniforms and Equipment Off of Department Premises**

6
  Plaintiffs argued that the nature of the job required Plaintiffs to dress at work.

7
8   However, the *Bamonte* holding establishes that the evidence offered at trial can only

support a verdict in favor of Defendant on donning/doffing. Given the overwhelming
9
evidence that deputies at the Department can and do dress at home, the only
10
reasonable conclusion for the Court and the jury was that there was no requirement to
11
dress at work and, therefore, donning and doffing of uniforms and equipment *at work*
12
could not reasonably be found to be integral and indispensable to police activities.
13
  There was testimony by several witnesses that at various points in their
14
careers, they have either in whole or in part dressed into their uniforms at home.[5]
15
Plaintiffs themselves admitted to dressing into uniform at home on a regular basis,
16
including Barker, Carpenter, Calkins and Nunley.[6] Nunley further testified that most
17
of the motor officers at the Southwest and Perris stations dressed in their uniforms at
18
home. [RP, Day 9, 5/20/08, 83:8-13, 84:8-11.][7] Sgt. Stephen Brown testified about a
19
time when the locker rooms were condemned and all deputies dressed at home for
20
months. [RP, Day 3, 37:22-38:10.][8]
21

22   [5] [Reporter's Transcript of Proceedings ("RP"), Day 6, 5/15/08, 39:18-25 (Sgt. Barton); Day 6, 5/15/08, 92:25-93:7 (Sgt. Martin); Day 6, 5/15/08, 205:8-15, 222:18-223:4 (Sgt. Reynolds); RP, Day 7, 5/16/08, 34:2-9, 37:18-38:5 (Asst.Sheriff Boyd); RP, Day 9, 5/20/08, 92:17-93:2 (Sgt. Hall).]

23   [6] [RP, Day 6, 5/15/08, 136:15-23; Day 7, 5/16/08, 177:10-12, 178:3-16; Day 7, 182:11-16; Day 9, 5/20/08, 82:25-

24   83:2, 84:5-7.] Plaintiff Cloyd also admitted that he currently dresses in his uniform at home. [RP, Day 7, 5/16/08, 173:25-174:5.]

25   [7] Plaintiff Broussard was aware of one deputy at the Palm Desert Station who dressed at home, and arrived to the station in uniform. [RP, Day 2, 5/8/08, 133:24-134:5.] Carpenter estimated that approximately 5 employees, out of a shift of 45 employees, would come to work already dressed in their uniforms. [RP, Day 7, 5/16/08, 180:19-181:1.] Sgt.

26   Barton testified that some deputies dress at home, and Sgt. Stephen Brown was aware of a couple of deputies who would report to the Perris station in their full uniform and gear. [RP, Day 6, 5/15/08, 39:21-22; Day 3, 5/9/08, 18:4-6.]

27   [8] Plaintiff McMurrich was aware of correctional deputies who would show up to the correctional facilities in their uniforms. [RP, Day 3, 5/9/08, 57:24-58:1.] McMurrich also testified that he dressed at home for one year when there

28   were no locker rooms at the correctional facilities. [RP, Day 3, 74:7-24.]

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

1       There was nothing inherent about the uniform or deputies' work in that

2 uniform which necessitated donning and doffing the uniform on Department

3 premises.[9]  Former Assistant Sheriff Labahn admitted that he had gotten dressed in

4 his uniform at home at various points throughout his career, and that the primary

5 factor which would determine where he would get dressed was his "personal

6 convenience." [RP, Day 3, 5/9/08, 170:4-171:5.] Sgt. Dittenhofer testified that while

7 he was working in corrections, "a lot of them [corrections deputies] would come to

8 work already dressed." [RP, Day 3, 5/9/08, 213:17-21; see also, Day 4, 5/13/08, RP

9 44:24-45:5.] Dittenhofer also confirmed that there were occasions where he dressed

10 in his uniform at home. [RP, 5/13/08, Day 4, 45:6-14.] Ron Komers, the Human

11 Resources Director for Riverside County, similarly testified to witnessing entire shifts

12 of correctional deputies arriving at the Robert Presley Detention Center in uniform.

13 [RP, Day 5. 5/14/08, 179:25-180:8.]

14       Additionally, there was extensive testimony, by Plaintiffs and defense

15 witnesses alike, that there was no Department policy or other requirement which

16 mandated that deputies dress into and out of their uniforms at work.

17 Plaintiff/Investigator Johnson specifically answered "no" to the question "did the

18 Department require you to get into your uniform at the station," and he further

19 confirmed that he was not aware of any written Department policy which required

20 deputies to get ready at work. [RP, Day 2, 5/8/08, 12:17-22.] Sgt. Pinon stated that

21 there was no Department requirement or policy which mandated that a deputy get

22 dressed at the station, and he confirmed that some deputies get dressed at home and

23 some showed up to the Indio station in full uniform. [RP, Day 2, 5/8/08, 120:2-17.][10]

---

[9] Boyd testified that some deputies at the Lake Elsinore station would don their uniforms off of Department premises. [RP, Day 7, 5/16/08, 38:9-11.] Labahn testified that while he was Chief Deputy overseeing court services, some deputies would report to their shifts at the courts already dressed in full uniform. [RP, Day 3, 5/9/08, 113:4-7.]

[10] Sgt. Dittenhofer testified that there was no requirement at RPDC for corrections or sheriff's personnel to get dressed at the corrections facility. [RP, Day 4, 5/13/08, 44:20-23.] Sgt. Barton responded that there was no requirement which prohibited deputies from dressing into their uniforms at home. [RP, Day 6, 5/15/08, 39:18-20.] Sgt. Martin testified that there was nothing that required deputies to dress in uniform at the Moreno Valley station. [RP, Day 6, 5/15/08, 93:8-18.] Sgt. David Scott Brown confirmed that deputies are permitted to dress into their uniforms at home, and he was aware of a few that did so. [RP, Day 6, 5/15/08, 170:18-24.] Sgt. Reynolds stated that she was not

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

1    Plaintiff Angelo confirmed that there was no requirement to dress into
2    uniforms at work, including during his assignments at both RPDC and Perris. [RP,
3    Day 4, 5/13/08, 119:13-120:5.] Barker similarly testified that there was no
4    Department policy or rule that prevented him from dressing into his uniform at home.
5    [RP, Day 6, 5/15/08, 137:15-17.] Plaintiff Long confirmed that so long as the
6    uniform was covered up, it was acceptable for deputies to dress at home. [RP, Day 6,
7    5/15/08, 232:25-233:3.] Further, Plaintiff Joslen testified that there was no
8    requirement to get dressed at work, although it was his practice, based on "personal
9    preference" to get dressed at work. [RP, Day 7, 5/16/08, 167:25-168:7.] Plaintiff
10   Lugo confirmed that deputies could put on their uniforms at home if they wanted to.
11   [RP, Day 9, 5/20/08, 52:2-4.][11] Komers testified that "there is a sheriff's policy that
12   allows people to put on their uniforms at home....Some people put them on at home,
13   some people put them on at work." [RP, Day 5, 5/14/08, 160:12-18; 179:21-22.]
14   Labahn testified that the Department does not have any rule or policy that requires
15   deputies to don or doff their uniforms on work premises. Labahn also testified about
16   the nature of the police uniform itself, astutely noting that "where one puts on one's
17   uniform would have no bearing on one's safety once one were on duty." [RP, Day 3,
18   5/9/08, 169:17-20,169:21-25.] Boyd similarly testified that deputies were permitted
19   to get dressed into their uniforms at home. [RP, Day 7, 5/16/08, 33:24-34:1.]

20   There simply can be no dispute that deputies had the *option and ability* to
21   dress at home, and many of them did so, and there was no Department policy which
22   required otherwise.

23   **D.    There was No *De Facto* Policy Which Required Deputies to Dress at Work; Deputies Did So Because of *Personal Preference***

24   

25   While Plaintiffs have argued that there was a *de facto* policy which required

26   ───────────────────────────────
required to dress into her uniform at the Palm Desert station. [RP, Day 6, 5/15/08, 186:2-7.]
27   [11] Although Plaintiff Carcamo testified that he was trained to get dressed at the station, he nonetheless admitted that "there was no directive that was told to me that I needed to dress at the station," and that he was not aware of any
28   Department Policy that required him to dress at the station. [RP, Day 5, 5/14/08, 216:8-22.] Carcamo stated that it was a deputy's choice whether or not to dress in uniform at the station. [RP, Day 5, 5/14/08, 216:23-217:1.]

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

Defendant County of Riverside's Supplemental
Brief re *Bamonte v. City of Mesa*

1 | deputies to dress at work, Plaintiffs failed to present sufficient evidence to prove that
2 | there was any such policy. Plaintiffs did not come forward with any evidence that a
3 | single deputy at the Department was ever disciplined for dressing at home. And the
4 | primary reasons cited by the deputies who did dress at work were strikingly similar to
5 | the reasons identified by the *Bamonte* plaintiffs -- factors which the Ninth Circuit
6 | expressly found to be an issue of employees' preferences, rather than any employer
7 | requirement, *de facto* or otherwise. See, *Bamonte* at 1.

8 |        For example, when Johnson was asked why he dressed at the Perris station,
9 | and not somewhere else, his response was that the main reason was "officer safety."
10 | [RP, Day 2, 5/8/08, 11:9-12:4.] Plaintiff Broussard similarly responded that he put
11 | on his equipment at the station, and not at home, because of safety issues -- and not
12 | because of any purported Department policy. [RP, Day 2, 5/8/08, 133:1-23.]
13 | Plaintiff Dierks expressly acknowledged that the reason he "geared up at the station"
14 | was because it was his **"personal preference,"** but he also cited that it was an
15 | "officer safety issue." [RP, Day 2, 5/8/08, 228:16-24.] When McMurrich was asked
16 | why he "geared up" at work, he also did not cite any Department mandate, but
17 | instead stated that he "didn't like driving back and forth with it [his uniform and
18 | equipment]" and discussed that he didn't like to take his boots home because the
19 | facilities were "not always the cleanest." [RP, Day 3, 5/9/08, 58:2-6.] McMurrich
20 | also stated that he dressed at the correctional facilities because it was his "personal
21 | preference" and that there was "no department requirement that [he] dress in [his]
22 | uniform at the facilities." [RP, Day 3, 5/9/08, 76:17-24.][12] Barker similarly testified
23 | that he came to work at the Southwest Detention Center dressed because it was "more
24 | convenient for me to change at home, put my uniform on at home. And what I would
25 | do is I would put a jacket on over my shirt so nobody would know I was in law

26 |
27 |
28 |

[12] When asked why he would put on his uniform at the station, Plaintiff Segobia responded that "it was handy, instead of me lugging my stuff back and forth from home....Second thing was an officer safety issue. I didn't want to get dressed at home so people would know what I did, I mean as far as being a cop...." [RP, Day 5, 5/14/08, 231:15-232:11.] Boyd responded that he would get dressed at home during the course of his career with the Department as a matter of "personal preference." [RP, Day 7, 5/16/08, 34:11-17.]

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

401486.3 RI080-032

8

Defendant County of Riverside's Supplemental
Brief re *Bamonte v. City of Mesa*

1    enforcement to drive to work." [RP, Day 6, 5/15/08, 137:9-14.][13]

2            That the majority of deputies dressed at the station is irrelevant. The proper

3    inquiry is whether deputies had the *option and ability* to don and doff their uniforms

4    and equipment off work premises. Strikingly, **26 witnesses**, out of the 35 total

5    witnesses who testified at the phase one trial, testified that they either dressed at

6    home, were aware of deputies dressing at home, that they dressed at work as a matter

7    of personal preference or officer safety, and/or they were not aware of *any*

8    Department policy which required deputies to dress at work. Clearly deputies did

9    have a very real *option and ability* to dress in their uniforms and equipment at home

10   because many of them did so, and without any adverse consequences. Therefore,

11   Plaintiffs' donning and doffing of their uniforms and equipment is not compensable

12   work under the FLSA.

13   **III.    THE HOLDING IN *BAMONTE V. CITY OF MESA* PRECLUDES ANY**

14   **LIABILITY FOR DEFENDANT FOR PLAINTIFFS' DONNING AND**
     **DOFFING CLAIM**

15           This Court, and the parties, are in the unique situation of having completed

16   two phases of trial, including a jury and bench trial, yet not having entered any

17   judgment. Thus, while it is clear from *Bamonte* that damages cannot be awarded for

18   the donning and doffing claim, the procedure for accomplishing this could come

19   through a variety of means. Probably the most straightforward, and which would not

20   involve contravening any portion of the jury's verdict, is for this Court to reconsider

21   its January 30, 2008 Order denying the County's Motion for Partial Summary

22   Judgment as to the donning and doffing claim, and now grant the County's Motion.

23           Another option would be to grant the County's Renewed Motion for

24   Judgment. Prior to *Bamonte*, perhaps it was not clear what weight should be given to

25   the extensive evidence that deputies were dressing at home on a regular basis, and

26

27   [13] It is anticipated that Plaintiffs may attempt to rely heavily on the testimony of Sgt. Stephen Brown, but Sgt. Brown
     merely testified that his concern about deputies dressing at home was based on officer safety issues, and that he would

28   "chastise" deputies "if they weren't wearing a jacket," not for the act itself of dressing at home. [RP, Day 3, 5/9/08,
     18:10-19:3.]

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

Defendant County of Riverside's Supplemental
Brief re *Bamonte v. City of Mesa*

1  without any adverse consequences.  In light of *Bamonte*, there is only one conclusion

2  which the jury could have reasonably reached, and which this Court can now reach --

3  judgment must be entered in favor of the County, and against Plaintiffs, as to the

4  donning and doffing claim.

     **A.   This Court Should Reconsider its Order Denying the County's
Motion for Summary Judgment, and Grant Judgment for the
County as to Plaintiffs' Donning and Doffing Claim**[14]

     **1.   The Court Committed a Clear Error of Law in Holding that
the Donning and Doffing of Plaintiffs' Uniform and
Protective Gear Was Done for the Benefit of the Employer**

9       The majority of the Court's Order focused on the first prong to the test for

10  whether an activity is integral and indispensable -- whether donning and doffing of

11  police uniforms and equipment was necessary to the execution of law enforcement

12  duties, as discussed further below.  As to the second prong of the test, however, the

13  Court summarily and incorrectly concluded that:

14       **"Indisputably, the donning and doffing of Plaintiffs' uniform and
protective gear in this case is 'done for the benefit of the
employer.'** *Alvarez,* 339 F.3d at 903." [Document No. 134, 7:2-3
(emphasis added).]

16       As discussed at length by the Ninth Circuit in *Bamonte*, however, the Court's

17  presumption was a legal error.  In fact, the donning and doffing of Plaintiffs' uniform

18  and protective gear, when employees selected the option of donning/doffing *at work*,

19  was for the benefit of the employees, and not the County of Riverside.  On this basis,

20  the Court should reconsider its earlier order and now grant summary judgment in

21  favor of the County as to Plaintiffs' donning and doffing claim.

22       Similar to the facts of this case, the City of Mesa required its officers "to wear

---

[14] The County will bring its Motion for Reconsideration pursuant to FRCP 59(e) and 60(b), and Local Rule 7-18 respectfully asking this Court to reconsider its January 30, 2008 Order Denying the County's Motion for Partial Summary Judgment. [Document No. 134.] Despite the fact that there has been a trial on the merits of this action, the County's Motion for Reconsideration will nonetheless be proper because it will be asserted on the grounds that this Court's denial of the County's Motion for Summary Judgment as to the donning and doffing Claim was an error of law that, if not made, would have required the Court to grant the County's Motion. See, *Wilson v. Arlington Co. v. Prudential Ins. Co.*, 912 F.2d 366, 368 (9th Cir. 1990).  The Motion for Reconsideration will be based on the fact that there has been an intervening change in controlling law and that the Court committed a clear error of law. *School Dist. No. 1J, Multnomah County v. ACandS, Inc.*, 5 F.3d 1255, 1266 (9th Cir. 1993).

Defendant County of Riverside's Supplemental
Brief re *Bamonte v. City of Mesa*

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

1   certain uniforms and related gear. *Bamonte* at 1. The officers argued that the nature
2   of this gear, and the nature of their job, made it preferable (if not necessary) to don
3   and doff their uniforms and gear at work, and cited to the seven considerations listed
4   above. *Bamonte* at 1. The Ninth Circuit, however, summarily rejected six of these
5   cited factors (and did not discuss the seventh factor, distractions due to being at
6   home) as providing any basis for compensation, on the grounds that these factors
7   showed that -- to the extent an officer chose to dress at the station -- it was for the
8   benefit of the officer and not the City of Mesa. *Bamonte* at 6.

9        That the majority of officers dressed at the station, or that the Department
10   provided lockers for its officers to dress at the station, did not impact the Court's
11   analysis of whether or not the donning and doffing activities -- at work -- were for the
12   employer's benefit. *See, Bamonte* at 1. Accordingly, to the extent this Court was
13   swayed by Plaintiffs' evidence that the "majority of deputies dress on Defendant's
14   premises" or that Defendant provided lockers and locker rooms, this Court erred, as a
15   matter of law. [See, Document No. 134, 10:9-18.]

16        In further evaluating whether or not the donning and doffing of uniforms and
17   equipment at work was for the benefit of the employer, the Ninth Circuit considered
18   whether or not "on-premises donning and doffing 'fulfill[ed] mutual obligations of
19   employer and employee.'" *Id.* at 6. Just as the officers failed to do in *Bamonte*, the
20   Plaintiffs in this case did not come forward with any evidence regarding an obligation
21   on the part of the County that would have been fulfilled by on-premises donning and
22   doffing. This fact is readily distinguishable from the facts at issue in *Steiner* and
23   *Alvarez*, where state law and industrial hygiene standards required that the employers
24   have their employees dress and undress out of their distinct safety gear at the
25   worksite. See, *Steiner, supra* at 250, 252; *Alvarez, supra* at 897-899, 901.
26   Accordingly, the act of donning and doffing at work in those cases was for the benefit
27   of the employer. The same simply cannot be said here.

28        Thus, in presuming that the donning and doffing of uniforms and equipment

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

1   was for the benefit of the County, the Court committed a prejudicial error.  The

2   proper legal analysis of this element does not rely on whether or not the uniform and

3   equipment are for the benefit of the employer, but rather relies on whether or not the

4   donning and doffing activities *at the employer's premises* are for the benefit of the

5   employer.  Having misapplied this prong of the integral and indispensable test, the

6   Court must reconsider its previous Order.

### 2. The Court Made an Error of Law in Finding that the Nature of the Uniform, and in Particular its Possible Command Presence, Made it Necessary to the Execution of Law Enforcement Duties

When evaluating the first prong of the test for whether or not a

preliminary/postliminary activity is integral and indispensable to the principal

activity, and therefore compensable, the proper test is not whether a police uniform is

*necessary* to the execution of law enforcement duties, but whether donning and

doffing the uniform *at work* is necessary to the execution of law enforcement duties.

Having misapplied the legal standard, this Court should reconsider its order denying

the County's Motion for Partial Summary Judgment.[15]

Both the Court's legal standard and legal analysis was flawed, and ultimately

rejected by the Ninth Circuit in *Bamonte v. City of Mesa*.  First, as to the proper legal

standard, the Ninth Circuit discussed extensively that the test is not whether the

uniform and equipment are necessary to law enforcement activities, but whether

donning and doffing the uniform and equipment *on work premises* is necessary to law

enforcement activities -- is there some unique benefit gained by putting on the

uniform at work, as opposed to putting on the uniform at home.  *Bamonte* at 8, citing

_____

[15] The Court reasoned that, "To determine whether the deputies' uniforms are 'necessary' to performing law enforcement activities requires close consideration of the nature of the uniform and the role it plays. ...[T]he uniform worn by law enforcement personnel arguably does much more than simply identify the occupation of its wearer. The distinctive dark uniform projects an aura of authority which directly contributes to a deputy's duties. A waitress's apron can't itself pour coffee in a diner's cup, but a jury could find that the sight of a law enforcement uniform alone is capable of restoring order to a chaotic situation....The Court thus agrees with the position taken by Judge Marilyn Hall Patel in *Lemmon v. City of San Leandro*, 2007 WL 4326743 (N.D.Cal. Dec. 7, 2007), that the law enforcement uniform's 'color, appearance, and component parts provides a gravitas that serve as an effective deterrent against crime....' Id. at *6." [Document No. 134, 7:19-8:5.]

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

Defendant County of Riverside's Supplemental
Brief re *Bamonte v. City of Mesa*

1 to *Abbe*, 2007 WL 4146696, at \*7.

2    To further illustrate this concept, the Ninth Circuit went on to discuss a
3 Second Circuit case which carefully (and properly) distinguished between the
4 concepts of integral and indispensable, and confirmed that just because an activity is
5 indispensable (arguably putting on the uniform and equipment) does not mean that it
6 is necessarily integral (putting on the uniform and equipment *at work*).  The Second
7 Circuit in *Gorman v. Consolidated Edison Corp.*, 488 F.3d 586 (2d Cir. 2007), relied
8 upon *Steiner* and *Alvarez*, in reasoning that only activities "that are integral *and*
9 indispensable to principal activities are compensable under the FLSA…."  *Bamonte*
10 at 10, citing *Gorman, supra* at 590.

11    Similarly here, while perhaps it can be argued that the law enforcement
12 uniform and equipment are indispensable to the work of law enforcement, they are
13 not necessarily integral to the work of law enforcement.  The uniform and equipment
14 accomplish their intended objective regardless of whether or not they are
15 donned/doffed at home, or on Department premises.  If there is command presence as
16 a result of a deputy wearing his/her uniform, it is just as effectively obtained by
17 dressing in the uniform at home; it is simply not integral.

18    Second, as to the Court's legal analysis, *Bamonte* soundly refuted that the
19 uniform itself was a necessary component of law enforcement.  In an attempt to
20 support their argument that the time spent donning and doffing their uniforms and
21 related gear was compensable, the police officers for the City of Mesa "emphasized
22 the relationship between their uniform and gear and the performance of their
23 duties…; the officers relayed their belief that the uniforms and gear contribute to their
24 command presence, thereby promoting officer and public safety in furtherance of law
25 enforcement goals."  *Bamonte* at 1.  However, the Ninth Circuit did not find the
26 officers' argument persuasive and instead relied exclusively on the two prong test for
27 what is integral and indispensable -- was the work "necessary to the principal work
28 performed and *done for the benefit of the employer*."  *Bamonte* at 5 (emphasis in

1   original.) "Command presence" is simply not a factor in assessing what is or is not

2   necessary to the principal work performed.  Moreover, in his concurrence on the issue

3   of uniform non-compensability, Judge Gould went on to further distinguish the

4   asserted "command presence" of the uniforms. *Bamonte*, Concurrence at p. 15; see

5   also, *Martin v. City of Richmond*, 504 F.Supp.2d 766, 774 (N.D.Cal. 2007).

6        The Ninth Circuit carefully detailed the cases which apply the correct legal

7   standard -- *Steiner, Alvarez, Ballaris, Abbe, Haight* and *Gorman* -- and further

8   clarified the legal standard in its own holding.  Judge Patel did not apply the correct

9   test in *Lemmon v. City of San Leandro,* and thus to the extent this Court cited to and

10  relied upon *Lemmon*, this Court also failed to apply the correct test.

11        **B.    In the Alternative, Judgment Should be Entered in Favor of the
12              County as to the Unpaid Overtime Claim for Donning and Doffing
                Uniforms and Equipment, or this Court Should Grant a Partial
13              New Trial**[16]

13        There was not sufficient evidence to support the jury's finding that the

14  donning and doffing of uniforms and equipment was an integral and indispensable

15  duty. *Bamonte* at 5.  To prove that an activity is integral and indispensable, Plaintiffs

16  must have shown by a preponderance of the evidence that donning and doffing of

17  uniforms and equipment at work is a) necessary to performing law enforcement

18  duties; and, b) done for the benefit of the County. *Bamonte* at 6, 8.  Thus, where the

19  evidence shows that the donning and doffing of uniforms and equipment on

20  Department premises is not required by law, by rules of the employer, or by the

21  nature of the work, then donning and doffing of uniforms and equipment cannot be

22

---

23  [16] In ruling on a JMOL after the jury has returned a verdict, the court may direct entry of judgment in favor of the
    moving party as a matter of law, order a new trial, or allow the judgment to stay. Fed. R. Civ. P. Rule 50(b). The
24  Motion may be made for either complete or partial judgment. *Ace v. Aetna Life Ins. Co.*, 139 F.3d 1241, 1247 (9th Cir.
    1998). As with a Rule 50(a) Motion made at the close of evidence, a post-verdict JMOL challenges the sufficiency of
25  the evidence, and will be granted if the only reasonable conclusion, considering all reasonable inferences in favor of the
    verdict, is that the moving party is entitled to judgment as a matter of law. *Gilbrook v. City of Westminster*, 177 F.3d
    839, 864 (9th Cir. 1999).
26      A party may move for a new trial if an error of law was made that substantially prejudiced the party or if the clear
    weight of the evidence does not support the verdict. See, FRCP Rule 59. Unlike judgment as a matter of law, a motion
27  for partial new trial requires the Court to weigh the evidence and assess the credibility of witnesses. *Murphy v. City of
    Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990). The Court does not have to view the evidence in the light most
28  favorable to the prevailing party. *Landes Constr. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987).

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

1  found to be integral and indispensable to the work of law enforcement. *Bamonte* at 6,

2  10; *Alvarez, supra* at 903; 29 C.F.R. § 790.8(c) n.65.  In light of the substantial

3  evidence detailed above, no reasonable jury could find that the donning and doffing

4  of uniforms and equipment was integral and indispensable, and therefore

5  compensable.  As such, this Court must enter judgment in favor of the County

6  regarding Plaintiffs' donning and doffing claim.

7        Alternatively, a partial new trial should be granted because the jury's verdict

8  that donning/doffing of uniforms and equipment is integral and indispensable to

9  Plaintiffs' principal law enforcement activities is against the clear weight of the

10  evidence; Plaintiffs did not prove by a preponderance of the evidence that they were

11  *required* to dress on Department premises.  Additionally, this Court erred in not

12  instructing the jury that where an employee changes into his/her uniform and

13  equipment at the workplace for the employee's own convenience, it does not

14  transform the donning and doffing into a principal (and therefore compensable)

15  activity.  [See, Special Jury Instruction No. 8, Compensable Activity -- Donning and

16  Doffing for Employee Convenience, Document No. 185, p.8 (electronic p.14 of 27).]

17  **IV.   CONCLUSION**

18        Based on the foregoing, the donning and doffing of uniforms and equipment

19  at the County was not and is not a compensable activity.  The evidence presented to

20  the Court both at the summary judgment stage and throughout the two phases of trial

21  unequivocally establishes that deputies had the *option and the ability* to don and doff

22  their uniforms and equipment off work premises.  Accordingly, no damages can be

23  awarded to Plaintiffs based on time spent donning/doffing uniforms and equipment.

24  Dated:  April 8, 2010                                    LIEBERT CASSIDY WHITMORE

25                                                          By:

26                                                             Brian P. Walter
                                                              Laura J. Kalty
27                                                            Attorneys for Defendant
                                                              COUNTY OF RIVERSIDE
28