1  JON Y. VANDERPOOL, ESQ., (CSB NO. 161611)
   ANGELA M. JAE, ESQ. (CSB NO. 248571)
2  GEORGIANA D'ALESSANDRO, ESQ. (CSB NO. 259397)
   TOSDAL, SMITH, STEINER & WAX
3  401 West A Street, Suite 320
   San Diego, CA 92101-7911
4  Telephone:  (619) 239-7200
   Fax:  (619) 239-6048
5  E-mail: jvanderpool@tosdalsmith.com
   E-mail: ajae@tosdalsmith.com
6  E-mail: gdalessandro@tosdalsmith.com

7  Attorneys for Plaintiffs

8

9                    UNITED STATES DISTRICT COURT

10           FOR THE CENTRAL DISTRICT OF CALIFORNIA

11                      SOUTHERN DIVISION

12  RONALD FARRIS, et al.,          )     CASE NO. CV05-06166 AG(CTx)
                                     )
13              Plaintiffs,          )     **PLAINTIFFS' SUPPLEMENTAL BRIEF**
                                     )     **RE: BAMONTE V. CITY OF MESA**
14       v.                          )
                                     )     Phase Two Trial:
15  COUNTY OF RIVERSIDE,             )          November 3, 2009
                                     )
16              Defendant.           )
    _____)

17

18

19

20

21

22

23

24

25

TOSDAL, SMITH, STEINER
& WAX
401 West A Street, Suite 320
San Diego, CA 92101-7911
Telephone: (619) 239-7200
Facsimile: (619) 239-6048
26

27

28

# TABLE OF CONTENTS

Page

I.    BAMONTE v. CITY OF MESA DOES NOT IMPACT PLAINTIFFS'
      CLAIMS . . . . . . . . . . . . . . . . . . . . . . . 1

II.   SUMMARY OF THE EVIDENTIARY RECORD AND HOLDING IN BAMONTE . 2

      1.   The Summary Judgment Record in Bamonte  . . . . . . 2

      2.   The Holding in Bamonte . . . . . . . . . . . . . . 3

III.  THE JURY'S PHASE ONE VERDICT IS NOT COMPROMISED BY
      BAMONTE  . . . . . . . . . . . . . . . . . . . . . . 5

      1.   The Evidentiary Record in this Case . . . . . . . . 5

           A)   Uniform/Equipment Readiness  . . . . . . . . . 5

           B)   Vehicle Readiness  . . . . . . . . . . . . . . 6

           C)   Department Written Rules, Policies,
                Training, Expectations, and Practices Re:
                Shift-Readiness  . . . . . . . . . . . . . . . 7

           D)   Deputies' Uncompensated Pre-Shift Readiness
                Activities Primarily Benefitted the County
                and the Public . . . . . . . . . . . . . . . 11

           E)   Integral Components of Pre-Shift Readiness
                Can Only Happen at the Station . . . . . . . 12

      2.   Jury Instructions Given and Applied . . . . . . . 12

      3.   The Evidentiary Record Here Meets
           Bamonte's Compensability Test . . . . . . . . . . 14

IV.   BAMONTE REQUIRES RE-EXAMINING THIS COURT'S DE
      MINIMIS RULING . . . . . . . . . . . . . . . . . . . 15

TOSDAL, SMITH, STEINER
& WAX
401 West A Street, Suite 320
San Diego, CA 92101-7911
Telephone: (619) 239-7200
Facsimile: (619) 239-6048

<u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                              <u>Page</u>

<u>Alvarez v. IBP, Inc.</u>, 339 F.3d 894, 902-903
(9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . 3-5, 15

<u>Ballaris v. Walker Siltronic Corp.</u>, 370 F.3d 901
(9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . 4

<u>Bamonte v. City of Mesa</u>, (9th Cir. March 25, 2010)
No. 08-16206 . . . . . . . . . . . . . . . . . 1-5, 12, 14, 15


<u>Statutes</u>

29 C.F.R. §785.24(c) . . . . . . . . . . . . . . . . . . . . 4

TOSDAL, SMITH, STEINER
& WAX
401 West A Street, Suite 320
San Diego, CA 92101-7911
Telephone: (619) 239-7200
Facsimile: (619) 239-6048

## I.    BAMONTE v. CITY OF MESA DOES NOT IMPACT PLAINTIFFS' CLAIMS

Bamonte v. City of Mesa, (9th Cir. March 25, 2010) No. 08-16206, does not impact plaintiffs' FLSA claims for compensation for vehicle and equipment pre-shift readiness. Bamonte expressly incorporated into Ninth Circuit FLSA jurisprudence a host of federal regulations, Department of Labor ("DOL") opinions/handbooks, and non-circuit opinions, that this Court instructed and the jury applied. Bamonte officers' FLSA claims for donning/doffing uniform and 'gear' failed under the "contextually-specific facts" of that case because officers were not required by law, rules of employer or nature of work to don/doff at station. Rather, it was the officers preference to don/doff at the station.

Consistent with Bamonte's holding, at our phase one trial, the Court instructed the jury that donning/doffing was integral and indispensable to plaintiffs' law enforcement activities "only if required to be done on the [employer's] premises 'by rules of the employer or by the nature of the work.'"[1]  The jury returned a unanimous special verdict that plaintiffs' pre-shift donning/doffing was integral and indispensable to their law enforcement activities.  This Court's October 2009 Order granting in part defendant's motion for summary judgment partially barred plaintiffs' claims as de minimis.[2]  Left intact was the phase one verdict awarding plaintiffs: 1) 11 minutes for patrol, court services, and transportation deputies to donn/doff equipment; and 2) 13 minutes for patrol deputies to prepare a patrol car. Substantial phase one evidence supported the jury's verdict that plaintiffs' pre-shift equipment and vehicle readiness had to be

TOSDAL, SMITH, STEINER
& WAX
401 West A Street, Suite 320
San Diego, CA 92101-7911
Telephone: (619) 239-7200
Facsimile: (619) 239-6048

---

[1] Ex 9: special jury instruction no. 9, emphasis added.

[2] The Court barred plaintiffs' claim for 9 minutes to don/doff a uniform, 6 minutes for sworn corrections to don/doff equipment, and 2 minutes for non-sworn corrections to don/doff equipment. (Doc No. 304, p. 24.)

1  performed at the station based upon 'rules of the employer or by

2  the nature of the work,' and primarily for the County's benefit,

3  rendering the time necessary to perform these activities fully

4  compensable under <u>Bamonte</u>.

5  II.   SUMMARY OF THE EVIDENTIARY RECORD AND HOLDING IN <u>BAMONTE</u>

6        1.   <u>The Summary Judgment Record in Bamonte</u>

7        City of Mesa police officers were required to wear uniforms

8  and gear consisting of: "trousers, a shirt, a name tag, a clip-on

9  or velcro tie, specified footwear, a badge, a duty belt, a service

10 weapon, a holster, handcuffs, chemical spray, a baton, and a

11 portable radio," and optional body armor. (4763.)[3]  The officer

12 plaintiffs claimed the City violated the FLSA by failing to

13 compensate them for donning/doffing their uniforms and accompanying

14 gear. (4762.)   The officers emphasized the relationship between

15 their uniform/gear and the performance of their duties, and argued

16 it was "preferable" to don and doff their uniform and gear at the

17 station, rather than at home, due to a variety of factors. (4763.)[4]

18     The City and plaintiffs filed cross motions for summary

19 judgment.  The district court granted the City's motion because the

20 officers had the option and ability to donn/doff their uniforms and

21 gear at home.   (4764, 4773, donning and doffing at the workplace

22 was "entirely optional.")   The officers failed to identify an

23 obligation of the City or officers that would be fulfilled by on-

24 premises donning and doffing; and made no claim that donning and

25 doffing the protective gear was done for the benefit of the

TOSDAL, SMITH, STEINER
& WAX
401 West A Street, Suite 320
San Diego, CA 92101-7911
Telephone: (619) 239-7200
Facsimile: (619) 239-6048

26

27  [3] Unless otherwise noted, page references are to <u>Bamonte v. City of Mesa</u>, (9th Cir. March 25, 2010) No. 08-16206, attached to the declaration of counsel submitted herewith as Exhibit 10.

28  [4] The factors articulated by the Ninth Circuit are: (1) the risk of loss or theft of uniforms and gear at home; (2) potential access to the gear by family members or guests; (3) distractions at home that might interfere with the donning process; (4) safety concerns with performing firearm checks at home; (5) discomfort associated with wearing the gear while commuting; (6) the increased risk of being identified as a police officer while off-duty; and (7) potential exposure of family members to contaminants and bodily fluids.

1   City. (4773, 4775.)

2          **2.   The Holding in Bamonte**

3          In a 2-1 split decision, the Ninth Circuit held that officers'

4   donning/doffing their uniforms and accompanying gear was not

5   compensable because officers were not required by law, rules of

6   employer or nature of work to don/doff at work. (4784, 4786.)

7   "There is no rule, regulation, policy or practice of the City that

8   limits the officers' option [to don/doff at home] in any

9   way." (4784.)   Though the Court acknowledged logical reasons to

10  don/doff at the station, including comfort, officer and family

11  member safety, these factors were deemed employee preferences, not

12  employer mandates. (4784.)

13         Bamonte affirmed that whether an activity is work and whether

14  it is compensable under the FLSA and the Portal-to-Portal Act

15  implicates a three-stage inquiry.   First, whether the activity is

16  "work"; second, whether it is integral and indispensable to the

17  principal activities of the job; and third, whether it is de

18  minimis. (4771 citing Alvarez v. IBP, Inc., 339 F.3d 894, 902-903

19  (9th Cir. 2003).)   As to the first stage, "work" is "physical or

20  mental exertion . . . controlled or required by the employer and

21  pursued necessarily and primarily for the benefit of the employer."

22  (4771-4772 citing Alvarez, 339 F.3d at 902.)   Bamonte cited to

23  Alvarez as support for the officers' claims that donning/doffing is

24  work because on the City required officers to wear a uniform and

25  related protective gear. (4772 citing Alvarez, 339 F.3d at 897.)

26         As to the second element, the Ninth Circuit held that

27  plaintiffs failed to demonstrate that donning and doffing at the

28  workplace was 'integral and indispensable," i.e. necessary to the

    principal work performed and done for the benefit of the employer.

TOSDAL, SMITH, STEINER
& WAX
401 West A Street, Suite 320
San Diego, CA 92101-7911
Telephone: (619) 239-7200
Facsimile: (619) 239-6048

1   (4774, 4772 citing <u>Alvarez</u>, 339 F.3d at 902-903.)   The <u>Bamonte</u>

2   officers "urged that they be compensated because of their

3   *preference* to don and doff at the workplace," but "made absolutely

4   no claim that donning and doffing the protective gear were done for

5   the benefit of the employer." (4775.)   Though prevention of

6   unnecessary workplace injury was a factor relied upon in <u>Alvarez</u>,

7   the Court rejected as mere speculation that officers would be

8   deterred from using protective gear, noting that "donning and

9   doffing of uniforms and protective gear in the City of Mesa have

10  gone uncompensated to this day." (4775.)

11      <u>Bamonte</u> adopted the DOL Memorandum issued May 31, 2006[5] (4778-

12  4779), which opined, <u>inter alia</u>, that: "donning and doffing of

13  required gear is within the continuous workday <u>only</u> when the

14  employer or the nature of the job mandates that it take place on

15  the employer's premises . . . if employees have the option and the

16  ability to change into the required gear at home, changing into

17  that gear is not a principal activity, even when it takes place at

18  the plant." (4776, emphasis added.)   In approving of the DOL's 2006

19  memorandum, the Court relied upon the following authorities:

20  •    29 C.F.R. §785.24(c), emphasized as integral and
21       indispensable, activities that took place "on the employer's
         premises at the beginning and end of the workday." (4779);

22  •    DOL opinion letter dated September 11, 1968, that "changing
         clothes on the employer's premises at the beginning and end of
23       the workday" is integral and indispensable, but if employee
         elects to dress at home they are not working even if the
24       uniform is required. (4780);

25  •    DOL opinion letter dated January 28, 1974, that "clothes
         changing time must be counted as hours worked if it is
26       required by the rules of the employer" and "under company
         rules the employees must change clothes on the premises at the
27       beginning and end of their work shifts." (4780);

28  ///

TOSDAL, SMITH, STEINER
& WAX
401 West A Street, Suite 320
San Diego, CA 92101-7911
Telephone: (619) 239-7200
Facsimile: (619) 239-6048

---

[5] The 2006 DOL Memorandum was issued subsequent to the Ninth Circuit's decisions in <u>Alvarez v. IBP, Inc.</u>, 339 F.3d 894 (9th Cir. 2003) and <u>Ballaris v. Walker Siltronic Corp.</u>, 370 F.3d 901 (9th Cir. 2004).

- DOL Field Operations Handbook that "[e]mployees who dress to go to work in the morning are not working while dressing even though the uniforms they put on at home are required to be used in the plant during working hours . . . " (4781.)[6]

Bamonte also approved of the district court's analysis in Abbe that: "the relevant inquiry is not whether the uniform *itself* or the safety gear *itself* is indispensable to the job . . . rather, the relevant inquiry is whether the nature of the work requires the donning and doffing *process* to be done on the employer's premises." (4777-4778 citing Abbe 2007 WL 4146696, at *7.)

"Consistent with these principles, [the Court] conclud[ed] that donning and doffing of police uniforms and gear are not compensable under the contextually-specific facts of this case." (4783.) "No requirement of law, rule, the employer, or the nature of the work mandates donning and doffing at the employer's premises, and none of the other factors articulated in Alvarez weigh[ed] in favor of a conclusion of compensability." (4786.) The Court affirmed the district court's grant of summary judgment for the City concluding that no material issue of fact was raised on the record that donning and doffing of police uniforms and related gear are compensable work activities under the FLSA, and Portal-to-Portal Act. (4786.)

## III. THE JURY'S PHASE ONE VERDICT IS NOT COMPROMISED BY BAMONTE

### 1.   The Evidentiary Record in this Case

A)   **Uniform/Equipment Readiness**: Plaintiffs' uniform and equipment pre-shift readiness entailed the following, performed in various sequences:

- Don required "Class B" uniform[7]: shirt, bullet-proof vest

TOSDAL, SMITH, STEINER
& WAX
401 West A Street, Suite 320
San Diego, CA 92101-7911
Telephone: (619) 239-7200
Facsimile: (619) 239-6048

---

[6] The Court concluded that based upon Alvarez these authorities apply to both donning and doffing "clothes" or "uniforms," and also apply to donning and doffing "gear." (4781 n. 13 citing Alvarez, 339 F.3d at 903.)

[7] All five job classifications of deputies: (1) patrol; (2) sworn corrections; (3) non-sworn corrections; (4) court services; and (5) corrections transportation, wear the required Department-issued Class B uniform. (Ex 2, p. 10:20-22 (patrol); Ex 3, p. 212: 11-20, p. 214; Ex. 4, p. 8: 7-24, p. 9: 16-25; Ex 5, p. 208: 3-12(corrections sworn/non-

(worn underneath the shirt), pants, boots, removable badge, patches/pins, and name tag.[8]  Boots, belt and "brass" (pins) must be shined.[9]  Uniform must be clean and neat.[10]

- Acquire all necessary equipment from logistics office, including HT radio (worn on person), vehicle keys, weaponry (twelve gauge shotgun, assault rifle and pepper ball gun), forms, spike strip, alcohol/breathalyser test. Record serial number or assigned number for equipment and car / unit keys.

- Don sam brown belt with HT radio and keys (obtained from logistics), firearm, baton, handcuffs, pepper spray/mace, sidearm, ammunition, magazine cases, pepper ball, and flashlight with keepers to keep the equipment snug.[11]

- Inspect operational function of all equipment, including sam brown belt and equipment obtained from logistics, to assure it is in proper working order.[12]

    **B)  Vehicle Readiness:** Patrol deputy pre and post-shift vehicle readiness required the following, performed in various sequences:

- Locate the assigned vehicle, then load the equipment obtained from logistics into the patrol vehicle.

- Inspect the inside and outside of vehicle by referencing and completing a two-sided inspection checklist consisting of 28 separate items to check inside and outside the vehicle, including: fluids, mileage, lights, sirens, and the back seat for contraband, note the vehicle's mileage and shift start time.[13]

- Log-into the mobile data computer ("MDC") terminal inside the patrol vehicle.

sworn/transportation );

[8] Ex 2, p. 10:20-22, p. 12-13: 23-4, Ex 2, p. 13:5-11, p. 110-113; Ex 6, p. 201: 12-17, p. 134-140; Ex 6, p. 202-203: 12-3, p. 231: 8-18.

[9] Ex 5, p. 209-210.

[10] Ex 6, p. 201-202: 23-4, p. 173: 7-20, 173: 21-24, p. 174: 3-6.

[11] Ex 2, p. 13:5-11; Ex 3, p. 212: 11-20, p. 214; Ex. 4, p. 8: 7-24, p. 9: 16-25; Ex 5, p. 23: 5, p. 208: 3-12, p. 208: 18-25, p. 230-231: 24-4,; Ex 6, p. 201: 12-17.

[12] Ex 2, testimony of plaintiff Glenn Johnson: p. 9-10: 6-2, p. 14:14-21, p. 16; testimony of plaintiff Shawn Broussard: p. 140-161; testimony of plaintiff Spencer Direks: p. 227-232; Ex 3, testimony of Sergeant Stephen Brown: p. 19-23, testimony of Assistant Sheriff Pete Labahn: p. 173-174; Ex 4, testimony of Sergeant Michael Dittenhofer: p. 27-29: 18-25; testimony of Sergeant Mark Bostrom p. 64: 5-16; testimony of plaintiff Chris Angelo p. 95: 18-25, 98-99: 25-5, p. 100:1-16; testimony of plaintiff Reynalda Bodnar: p. 142-143: 10-19; Ex 5, testimony of plaintiff David Granito p. 22-24: 14-25, p. 25-26: 18-7, p. 31-32: 21-4; testimony of plaintiff Jose Carcamo: p. 202-204: 9-18; testimony of plaintiff Thomas Segobia: p. 227-229:7-15, 229-230: 16-.23, p. 234: 1-25; testimony of plaintiff Eric Hamilton: p. 250: 12-22, 251-254: 3-20, Ex 6, p. 7-8: 8-5; Ex 6, testimony of Sergeant David Barton: p. 24-25: 15-25, p. 26-27: 4, p. 28: 3-11; testimony of Sergeant Timothy Martin: p. 61-65: 21-16; testimony of Plaintiff Maxie Barker: p. 145: 10-25, p. 147: 1-4, 20-25, p. 148-149: 1-25, p. 150: 3-25, p. 151; testimony of Sergeant Misty Reynolds: p. 186-187:15-7.

[13] Ex 2, p. 15-18: 20-11; Ex 90: Vehicle inspect log, admitted on 5/08/08.

TOSDAL, SMITH, STEINER & WAX
401 West A Street, Suite 320
San Diego, CA 92101-7911
Telephone: (619) 239-7200
Facsimile: (619) 239-6048

- Load and inspect equipment from deputy's personal vehicle or locker into the patrol unit.

- Return to the station approximately 15-minutes prior to the end of the 10-hour shift to log-off the MDC, unload the war bag with equipment and weaponry, return equipment to logistics, park the patrol unit in the assigned space, and turn-in the daily activity log.[14]

C)   **Department Written Rules, Policies, Training, Expectations, and Practices Re: Shift-Readiness:** The Sheriff's Department is governed by its General Orders: permanent operating regulations and directives that are binding upon all personnel.[15] The Field Operations Manual prescribes rules for field operations personnel, including patrol deputies.[16]   Compliance with all Department General Orders and Field Operations Manual are job requirements for deputies.[17]   "Failure of any member to perform the duties of their rank, assignment, and/or violation or any general order or other directive may be considered sufficient cause for discharge, demotion, suspension, among other things."[18]

General Orders provide, in pertinent parts: "Department members shall report for duty promptly and properly at the time specified by their supervisors."[19]

---

[14] Ex 2, testimony of plaintiff Glenn Johnson: p. 9-10: 6-2, p. 14:14-21, p. 16; testimony of plaintiff Shawn Broussard: p. 140-161; testimony of plaintiff Spencer Direks: p. 227-232; Ex 3, testimony of Sergeant Stephen Brown: p. 19-23, testimony of Assistant Sheriff Pete Labahn: p. 173-174; Ex 4, testimony of Sergeant Michael Dittenhofer: p. 27-29: 18-25; testimony of Sergeant Mark Bostrom: p. 64: 5-16; testimony of plaintiff Chris Angelo p. 95: 18-25, 98-99: 25-5, p. 100:1-16; testimony of plaintiff Reynalda Bodnar: p. 142-143: 10-19; Ex 5, testimony of plaintiff David Granito p. 22-24: 14-25, p. 25-26: 18-7, p. 31-32: 21-4; testimony of plaintiff Jose Carcamo: p. 202-204: 9-18; testimony of plaintiff Thomas Segobia: p. 227-229:7-15, 229-230: 16-.23, p. 234: 1-25; testimony of plaintiff Eric Hamilton: p. 250: 12-22, 251-254: 3-20, Ex 6, p. 7-8: 8-5; Ex 6, testimony of Sergeant David Barton: p. 24-25: 15-25, p. 26-27: 4, p. 28: 3-11; testimony of Sergeant Timothy Martin: p. 61-65: 21-16; testimony of plaintiff Maxie Barker: p. 145: 10-25, p. 147: 1-4, 20-25, p. 148-149: 1-25, p. 150: 3-25, p. 151; testimony of Sergeant Misty Reynolds: p. 186-187:15-7.

[15] Ex. 3, testimony of Assistant Sheriff Pete Labahn: p. 98-99: 2-9; Ex 7, testimony of Deputy Director of Code Enforcement John Boyd: p. 67: 4-7.

[16] Ex 3, 101-102: 7-22.

[17] Ex 6, testimony of Sergeant Misty Reynolds, p. 200-22-25.)

[18] Ex 7, p. 67: 8-14 (General Orders section 101.08).

[19] Ex 7, p. 67: 15-21 (General Orders Section 205.05).

TOSDAL, SMITH, STEINER
& WAX
401 West A Street, Suite 320
San Diego, CA 92101-7911
Telephone: (619) 239-7200
Facsimile: (619) 239-6048

Field Operations Manual, "reporting for duty,"[20] prescribes that "duty time" is that which is assigned by the station, bureau, or facility commander or his designee"[21]:

- Deputies must report to duty appropriately groomed, wearing the proper uniform and appropriate dress with all necessary personal equipment for the duty assignment.[22]

- A deputy is responsible for maintenance of the condition of all equipment on his person taken out onto the field.[23] A uniform is required equipment.[24]

- "All personnel authorized to wear departmental-issued uniform shall possess and maintain, ready for immediate use, the uniform, equipment, and other required articles prescribed by the Sheriff."[25]

- "Members supplied with uniforms and/or equipment items are responsible for the proper care and maintenance of the uniform and assigned equipment."[26]

- Deputies must "maintain their equipment and firearms in clean, serviceable condition that meets Department standards."[27]

Department General Orders authorized and sergeants routinely inspected patrol and correctional deputies' uniforms and equipment at the start of shift/briefing.[28] The inspection included cleanliness of deputies' boots, neatness and cleanliness of the uniform, name tag and badge, and proper condition of all necessary equipment, including the sam brown belt and firearm.[29]

In addition to General Orders, the Department established

---

[20] Ex 3, p. 102: 9-16, 105-106:11-1.

[21] Ex 3, p. 103:3-6,

[22] Ex 3, p. 103:14-23.

[23] Ex 6, p. 201: 3-11.

[24] Ex 7, p. 57: 14-17.

[25] Ex 7, p. 56-57: 23-13.

[26] Ex 6,p. 131-132:19-10 (General Orders section 20808).

[27] Ex 7, p. 57-58: 18-1.

[28] Ex 4, p. 10: 6-25.

[29] Ex 6, p. 173: 7-20.

TOSDAL, SMITH, STEINER
& WAX
401 West A Street, Suite 320
San Diego, CA  92101-7911
Telephone: (619) 239-7200
Facsimile: (619) 239-6048

CASE NO. CV05-06166 AG(CTx)

policy and expectations through practice and training.[30]   Plaintiff

Shawn Broussard conducted a video readiness routine in accordance

with Department policy and his training to don his uniform and

equipment and ready his patrol vehicle at the station.[31]  There was

substantial evidence that the Department trained, expected, and

directed deputies to arrive at the station 30 minutes or more

before shift to don their uniform and equipment, obtain and inspect

equipment from logistics and personal vehicle, ready and inspect

the patrol vehicle, and report to shift briefing ready to go "10-

8," directly into service.[32]

As a deputy on patrol at Perris station from 2003 to 2006,

plaintiff Chris Angelo's field training officers ("FTOs")

instructed him to report to the station approximately 30 minutes

prior to the start of his shift to don his uniform and equipment

and prepare his patrol vehicle.[33]  Angelo's FTOs trained him to don

---

[30] Ex 4, testimony of Undersheriff Neil Lingle: p. 49-50: 24-7 (an order to do something from a superior officer within the Sheriff's Department to a subordinate officer is a job requirement); Ex. 2, testimony of plaintiff Shawn Broussard: p. 126-131 (The Department did not issue written orders regarding all pre-shift readiness expectations, e.g. vehicle readiness, rather, Department expectations were communicated through the practice and training.).

[31] Ex. 2, p. 126-131; Ex 3, testimony of Undersheriff Pete Labahn: p. 145-146: 21-6, 9. 146-147: 24-6 (video demonstration of pre-shift readiness activities performed by plaintiff Shawn Broussard were "required" by the Department and Brossard's performance of such functions in exemplar video shown to the jury were consistent with those requirements).

[32] Ex 6, testimony of Sergeant David (Scott) Brown: p. 171-172: 9-22; testimony of plaintiff Maxie Barker: p. 145-146: 23-9, p. 149: 11-17; Ex 4, testimony of Undersheriff Neil Lingle: p. 204: 12-24, Ex 4, p. 211:1-10, p. 211: 20-25; testimony of Sergeant Michael Dittenhofer: p. 16-17: 16-4, p. 23-24: 18-2, p. 24-25:20-24, p. 27:12-15; testimony of Sergeant Mark Bostrom: p. 58: 8-25, p. 61: 2-6; Ex 5, testimony of plaintiff David Granito: p. 21-22; testimony of plaintiff Chris Hamilton: p. 253: 3-5; Ex 7, testimony of Assistant Sheriff John Boyd: p. 39-40: 10.

[33] Ex 4, testimony of plaintiff Chris Angelo: p. 95-96: 18-23. Plaintiff Jose Carcamo, assigned to Perris station as a patrol deputy in 2002, was also trained by his FTOs to don his uniform at the station, to get into his equipment at the station, and to prepare his patrol vehicle at the station. Ex 5, p. 200-2002: 21-18. Carcamo observed his FTOs getting into their uniforms at the station. None of the patrol deputies her observed arrived to work in uniform. Ex 5, p. 202: 9-18. As a correctional deputy at Robert Presley Detention Center from 2001 to 2003, plaintiff Glenn Johnson was trained by his FTOs to dress at the station. Ex 4, testimony of plaintiff Glenn Johnson: p. 126: 2-4. As a Court Services field operative from 2000 through April 2005, plaintiff Reynalda Bodnar's sergeants expected her to report to duty in uniform with her patrol vehicle ready. Ex 4, p. 136: 1-8, p. 136: 1-8. When Bodnar became a FTO at Perris station in July 2005, she trained patrol deputies to engage in pre-shift readiness, including readying their uniform and equipment just as she had been trained to do. Ex 4, p. 147-148: 25-8. Plaintiff Dayle Long testified that as a correctional deputy at RPDC, he understood he was not permitted to don his uniform and gear outside of the facility. Ex 6, p. 232: 7-24. Plaintiff David Granito testified that he always donned his uniform and equipment at the station because that was the way he was trained. Ex 5, p. 24: 10-16.

TOSDAL, SMITH, STEINER
& WAX
401 West A Street, Suite 320
San Diego, CA 92101-7911
Telephone: (619) 239-7200
Facsimile: (619) 239-6048

1    his uniform and gear at the station.[34]  Deputies and sergeants alike

2    testified as to the long-standing <u>de facto</u> rule that deputies

3    "gear-up" at the station; changed into their uniforms, obtained,

4    donned and inspected their equipment, loaded and readied their

5    patrol vehicles.[35]  When Angelo became a FTO himself, he trained

6    deputies as he had been, to come to the station prior to shift to

7    don their uniforms and equipment and prepare their patrol car.[36]

8        The Department is one of the largest law enforcement agencies

9    in California and employees over 1,600 sheriff's deputies.  Deputy

10   Broussard donned his uniform and equipment at the station and knew

11   only one deputy at Palm Desert that did not don his uniform at the

12   station.[37]  Plaintiff Glenn Johnson donned and doffed his uniform

13   and equipment at the station, along with everyone he worked with,

14   including sergeants.[38]  Deputies at Indio station got dressed at the

15   station with exceptions occurring "once in a blue moon."[39]  It was

16   Sergeant Stephen Brown's practice as a deputy at Jurupa Valley

17   station to always don at the station.[40]  The deputies Sergeant Brown

18   supervised at Perris Station also donned their uniforms and

19   protective gear at the station.  Plaintiff Chris Hamilton and

20   everyone on patrol at Southwest station donned their uniform and

21   equipment at the station.[41]

22

23      [34] Ex 4, testimony of plaintiff Chris Angelo: p. 97: 9-20, p. 126: 5-7.

24      [35] Ex 4, testimony of plaintiff Chris Angelo: p. 97: 9-20, p. 99:6-13.

25      [36] Ex 4, testimony of plaintiff Chris Angelo: p. 111: 3-16.

      [37] Ex. 2, p. 133-134: 24-5.

26      [38] Ex. 1, p. 11:9-11, p. 12:5-11. Johnson knew of only one deputy in the Department that did not don his
uniform at the station. Ex. 1, p. 54: 11-18.

27      [39] Ex 2, testimony of Sergeant Jorge Pinon: p. 91:2-7, p. 122:3-20.

28      [40] Ex 3, p. 17-18: 10-9, p. 17:21-25. It was Sergeant David (Scott) Brown's practice to always put on his
uniform and equipment at the station. Ex 6, p. 175:22-24. Sergeant Misty Reynolds donned her uniform at the station.
Ex 6, p. 203: 22-24.

      [41] Ex 5, p. 253-254: 23-2.

TOSDAL, SMITH, STEINER
& WAX
401 West A Street, Suite 320
San Diego, CA  92101-7911
Telephone: (619) 239-7200
Facsimile: (619) 239-6048

1    **D) Deputies' Uncompensated Pre-Shift Readiness**
2    **Activities Primarily Benefitted the County and the Public:**
3    Undersheriff Neil Lingle, the second highest ranking officer at the
4    Department and second in command to the Sheriff, expected deputies
5    to arrive at the start of their shifts in uniform and ready to be
6    deployed.   Undersheriff Lingle testified that the Department's
7    readiness expectations were intended to protect the public.
8    Thorough pre-shift readiness ensured that a deputy's uniform,
9    equipment, and vehicle was in proper working order upon being
10   deployed.[42]   Pre-shift uniform, equipment, and vehicle readiness
11   further allowed deputies to respond to emergencies immediately upon
12   coming onto their 10-hour shifts.[43] "The bad guys don't take any
13   time off just because we're in briefing.  So if a critical call for
14   service comes in and you need to clear the briefing room, you need
15   to be ready to go at that time."[44]  The Department's goal was to
16   have deputies out in the field servicing calls as much as
17   possible.[45]  Pre-shift uniform, equipment and vehicle readiness
18   ensured "everything is ready to go so there's no hesitation when
19   you need to pull your weapon or to check your gun or to make sure
20   your vehicle is prepared to get to that call that you're
21
22

---

[42] Ex 4, p. 204-205: 22-4, p. 211: 20-25, p. 212: 1-3.

[43] Ex 3, testimony of Sergeant Stephen Brown: p. 19:8-20 (the expectation was that patrol deputies be out in the field immediately after briefing to handle calls from the community); see also Ex. 2, testimony of plaintiff Spencer Dierks: p. 226-227: 24-7 (Pre-shift readiness permitted patrol deputies at Palm Desert station to be ready to respond to a critical call at the time the shift started); Ex 6, testimony of Sergeant Timothy Martin: p. 55-57, p. 57-58: 24-5 (Deputies at Cabazon/Banning station were required to prepare patrol vehicles prior to the start of shift so that they could go "10-8," and if an emergency call came deputies could respond immediately); Ex 2, testimony of Sergeant Jorge Pinon: p. 89-90: 15-16 (coming onto a swing shift [3:00 p.m. to 1:00 a.m.] at Indio station as "like going to war" and patrol deputies would sometimes need to depart from briefing early to respond to critical calls to protect the public).

[44] Ex. 2, p. 226-227: 24-7.

[45] Ex 4, testimony of Sergeant Mark Bostrom: p. 61:7-19; p. 61:7-19; p. 58:8-25 (Deputies at Moreno Valley were expected to be ready to go out in the field on patrol immediately after briefing.  As a sergeant, it was in his interest to have patrol deputies out in the field servicing calls for as much time as possible).

TOSDAL, SMITH, STEINER
& WAX
401 West A Street, Suite 320
San Diego, CA  92101-7911
Telephone: (619) 239-7200
Facsimile: (619) 239-6048

11          CASE NO. CV05-06166 AG(CTx)

1   assigned."[46]  A thorough vehicle inspection and shift readiness

2   protects the deputy and the public.[47]

3          E)    **Integral Components of Pre-Shift Readiness Can Only**

4   **Happen at the Station:** There was substantial evidence that pre-

5   shift readiness encompassed an interrelated series of activities

6   that must take place at the station.  Deputies could only acquire

7   and signed-out from the station logistics offices their keys, HT

8   radio, vehicle keys, weaponry, and other necessary equipment for

9   the patrol assignments, before inspecting, loading and/or donning

10  them.   To load, inspect, and log-onto the MDC requires first

11  acquiring and locating the assigned vehicle on County premises.

12  Requiring deputies acquire and perform such activities at the

13  station benefitted the County, both by assuring operation of the

14  equipment (deputies could swap faulty equipment) and minimized

15  costs because the County did not have to issue each separate

16  radios, weaponry, and other equipment to each deputy.

17         2.    **Jury Instructions Given and Applied**[48]

18         This Court instructed the jury that plaintiffs' pre and post-

19  shift activities must meet the FLSA definition of work that <u>Bamonte</u>

20  affirmed.[49]   The Court further instructed the jury that even if

21  certain pre-shift activities constituted "work," the activities

22  were not compensable unless plaintiffs proved their activities were

23  "integral and indispensable" to a principal activity of the

24  _____

25  [46] Ex 4, testimony of plaintiff Reynalda Bodnar: p. 149: 19-22, p. 167: 8-15, (the Department's expectation was: "commit your time to the Department and get your stuff done so that you can go out in the field and be there in case something happens")

26  [47] Ex 6, testimony of Sergeant Misty Reynolds: p. 224-225: 9-9.

27  [48] Unlike the instant case, the <u>Bamonte</u> officers moved for partial summary judgment on the compensability of donning/doffing their uniforms and 'gear' requiring the district court rule on the issue as a matter of law instead of proceeding to a jury trial on issues of fact presented by such claims.

28  [49] Ex 9: special jury instruction no. 29 (work is "physical or mental exertion . . . controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer or the employer's business").

TOSDAL, SMITH, STEINER
& WAX
401 West A Street, Suite 320
San Diego, CA  92101-7911
Telephone: (619) 239-7200
Facsimile: (619) 239-6048

1  employer, and that "an 'integral and indispensable' activity must
2  be necessary to the principal work performed and done for the
3  benefit of the employer.[50]   The next instruction stated: "donning
4  and doffing should be considered integral and indispensable to a
5  principal activity <u>only if</u> it is required to be done on the
6  premises 'by rules of the employer or by the nature of the work.'"[51]
7  Similarly consistent with <u>Bamonte's</u> holding, the jury was
8  instructed that a requirement may be express or implied.[52]

9      The special verdict form asked if donning/doffing the uniform
10  was integral and indispensable and a separate interrogatory asked
11  if donning/doffing the equipment was integral and indispensable.
12  "Equipment" was not defined on the special verdict.   During
13  deliberations, the jury astutely asked by note what constituted
14  "equipment"?   The parties and the Court agreed equipment means
15  "only equipment that is donned or doffed," and referred to the jury
16  instructions defining don/doff.[53]   The jury returned a unanimous
17  special verdict that plaintiffs' donning/doffing uniform and
18  equipment was "integral and indispensable" to their law enforcement
19  activities.[54]   The jury also found the Department required patrol
20  deputies to perform the work of preparing patrol cars before shift,
21  and knew or should have known that plaintiffs were performing the
22  work of preparing patrol cars before shift.[55]

23      This Court's October 2009 Order granting in part defendant's
24  motion for summary judgment barred as <u>de minimis</u> plaintiffs' claim

25

---

TOSDAL, SMITH, STEINER
& WAX
401 West A Street, Suite 320
San Diego, CA 92101-7911
Telephone: (619) 239-7200
Facsimile: (619) 239-6048

26  [50] Ex 9: special jury instruction no. 7, offered by Defendant.
    [51] Ex 9: special jury instruction no. 9, offered by Defendant.
27  [52] Ex 9: special jury instruction no. 41.
    [53] Ex 8, p. 4-6, p. 6: 8-17, p. 7-9;  Ex 9: special jury instructions nos. 30, 31.
28  [54] Special verdict question nos. 2, 3.
    [55] Special verdict question nos. 4, 5.

for 9 minutes to don/doff a uniform, 6 minutes for sworn corrections to don/doff equipment, and 2 minutes for non-sworn corrections to don/doff equipment.[56]

### 3. The Evidentiary Record Here Meets Bamonte's Compensability Test

The extensive evidentiary record in this case substantiated the compensability of patrol, court services, and transportation deputies' donning/doffing equipment and patrol vehicle readiness.[57] Deputies' donned/doffed equipment includes the sam brown belt that contained HT radio and keys (obtained from logistics), firearm, baton, handcuffs, pepper spray/mace, sidearm, ammunition, magazine cases, pepper ball, and flashlight with keepers to keep the equipment snug;[58] and bullet-proof vest (worn underneath the uniform), badge, patches/pins, and name tag.[59] Equipment readiness entailed not only donning (and loading the vehicle for patrol deputies), but also inspecting its operational function and cleanliness.[60] Patrol vehicle readiness took place exclusively on County premises and required patrol deputies to acquire keys to a patrol unit and equipment/weaponry from County logistics office, locate the patrol unit, inspect and load equipment into the unit, log-on to the mobile data computer ("MDC") terminal inside the unit, and inspect/clean the unit.[61]

---

[56] Doc No. 304, p. 24.

[57] Plaintiffs' current claims are for: 1) 11 minutes for to donn/doff equipment; and 2) 13 minutes for patrol deputies to prepare a patrol car.

[58] Ex 2, p. 13:5-11; Ex 3, p. 212: 11-20, p. 214;  Ex. 4, p. 8: 7-24, p. 9: 16-25; Ex 5, p. 23: 5, p. 208: 3-12, p. 208: 18-25, p. 230-231: 24-4.; Ex 6, p. 201: 12-17.

[59] Ex 2, p. 10:20-22, p. 12-13: 23-4, p. 134-140; Ex 6, p. 202-203: 12-3, p. 231: 8-18.)

[60] Ex 2, p. 13:5-11; Ex 4, p. 166: 7-19; Ex 6, p. 201: 12-17, p. 201-202: 23-4.Ex 6, p. 173: 7-20, p. 173: 21-24, p. 174: 3-6.

[61] Ex 2,p. 9-10: 6-2, p. 14:14-21, p. 16, p. 140-161, p. 227-232; Ex 3, p. 19-23, p. 173-174; Ex 4, p. 27-29: 18-25, p. 64: 5-16, p. 95: 18-25, 98-99: 25-5, p. 100:1-16, p. 142-143: 10-19; Ex 5, p. 22-24: 14-25, p. 25-26: 18-7, p. 31-32: 21-4, p. 202-204: 9-18, p. 227-229: 7-15, 229-230: 16-.23, p. 234: 1-25, p. 250: 12-22, 251-254: 3-20; Ex 6, p. 7-8: 8-5,

TOSDAL, SMITH, STEINER & WAX
401 West A Street, Suite 320
San Diego, CA 92101-7911
Telephone: (619) 239-7200
Facsimile: (619) 239-6048

1       Unlike the <u>Bamonte</u> officers' pre-shift donning/doffing, which

2   remains uncompensated to this day (4775), after this suit was filed

3   in October 2005, the Department's pre-shift readiness practices

4   changed dramatically.  Currently, shift briefing begins 10-minutes

5   after shift and patrol deputies ready their patrol units after

6   shift briefing, such that deputies are compensated for both

7   donning/doffing and vehicle readiness.[62]   That the County now

8   compensates officers for these readiness activities evidences their

9   benefitting the public.

10  **IV.   <u>BAMONTE</u> REQUIRES RE-EXAMINING THIS COURT'S DE MINIMIS RULING**

11      This Court's October 2009 MSJ order relied upon <u>Alvarez</u> to

12  hold that time spent donning/doffing "non-unique protective gear"

13  was <u>de minimis</u> and not compensable.[63]   <u>Bamonte</u> distinguishes

14  <u>Alvarez's</u> barring compensation for 'generic' protective gear,

15  emphasizing the context-specific inquiry.  (4784-4785.)

16  Accordingly, <u>Bamonte</u> warrants this Court's reconsidering its

17  October 2009 ruling based upon the evidentiary record referenced

18  herein.

19

20  DATED:  April 9, 2010          TOSDAL, SMITH, STEINER & WAX

21                                       BY:  s/ Georgiana D'Alessandro
                                     Email: gdalessandro@tosdalsmith.com

22                                       JON Y. VANDERPOOL

23                                       GEORGIANA D'ALESSANDRO
                                     Attorneys for Plaintiffs

24

25

26

TOSDAL, SMITH, STEINER
& WAX
401 West A Street, Suite 320
San Diego, CA 92101-7911
Telephone: (619) 239-7200
Facsimile: (619) 239-6048

27  p. 24-25: 15-25, p. 26-27: 4, p. 28: 3-11, p. 61-65: 21-16, p. 145: 10-25, p. 147: 1-4, 20-25, p. 148-149: 1-25, p. 150: 3-25, p. 151, p. 186-187:15-7.

28    [62] Ex 2, p. 50: 1-13.

    [63] Doc. No. 304, p. 24 citing <u>Alvarez</u>, 339 F.3d at 903.