

JS - 6

# UNITED  STATES  DISTRICT  COURT

## FOR  THE  CENTRAL  DISTRICT  OF  CALIFORNIA

| | |
|---|---|
| **RONALD FARRIS,** *et al.* ) | **CASE NO. CV 05-6166 AG (CTx)** |
| ) | |
| **Plaintiffs,** ) | |
| ) | **ORDER ADDRESSING ISSUES** |
| **v.** ) | **REMAINING AFTER SECOND** |
| ) | **TRIAL PHASE** |
| **COUNTY OF RIVERSIDE,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |
| _____ ) | |

In this case, Plaintiffs are certain deputies ("Plaintiffs") that work for Defendant County of Riverside ("Defendant").  Plaintiffs filed this lawsuit seeking overtime pay for "donning and doffing" of their uniforms and protective equipment and readying their patrol cars.  Plaintiffs contend Defendant deprived them of compensation due under the Fair Labor Standards Act ("FLSA").  Specifically, Plaintiffs assert that Defendant wrongfully denied them overtime compensation for work-related activities done outside of Plaintiffs' scheduled shifts.

Many proceedings have already occurred.  The Court issued orders on two motions for summary judgment/adjudication, and both orders addressed many issues.  Further, trial of this case was bifurcated into two phases.  In the first phase, a jury decided certain factual issues.  In the second phase, the parties offered evidence and arguments concerning Defendant's affirmative

1    defenses.  After the second phase, several issues remained to be decided.

2         Before the Court could decide these issues, the Ninth Circuit weighed in on the

3    compensability of donning and doffing of police uniforms and protective gear under the FLSA.

4    *Bamonte v. City of Mesa*, 598 F.3d 1217 (9th Cir. 2010).  Because *Bamonte* discussed issues

5    similar to those presented here, the Court requested supplemental briefing concerning the effect

6    of *Bamonte* on this case.

7         In this Order, the Court first addresses whether any of the earlier rulings in this case

8    should be reconsidered under *Bamonte*.  The Court then addresses the issues that remained after

9    the second phase of the trial.

10

11   **<u>DISCUSSION</u>**

12

13   **1.    THE EFFECT OF *BAMONTE***

14

15        The parties argue that *Bamonte* should change various aspects of this case.  Before

16   addressing the parties' arguments, a review of the FLSA and the Portal-to-Portal Act is helpful.

17        "'It is axiomatic, under the FLSA, that employers must pay employees for all hours

18   worked.'"  *Bamonte*, 598 F.3d at 1220 (quoting *Alvarez v. IBP, Inc.*, 339 F.3d 894, 902 (9th Cir.

19   2003), *aff'd on other grounds sub nom. IBP v. Alvarez*, 546 U.S. 21 (2005)).  But "'[t]he

20   Portal-to-Portal Act . . . relieves an employer of responsibility for compensating employees for

21   activities which are preliminary or postliminary to the principal activity or activities of a given

22   job.'"  *Id.* (quoting *Alvarez*, 339 F.3d at 902).  Still "The Supreme Court explicitly articulated

23   that 'activities performed either before or after the regular work shift, on or off the production

24   line, are compensable under the portal-to-portal provisions of the [FLSA] if those activities are

25   an integral and indispensable part of the principal activities . . . .'"  *Id.* (quoting *Steiner v.*

26   *Mitchell*, 350 U.S. 247, 256 (1956)).

27        *Bamonte* discerned a three-part inquiry for whether preliminary and postliminary activity

28   is compensable.  First, the activity must meet the definition of "work."  *Id.* at 1225.  Second, the

1  activity must be an "integral and indispensable" duty.  *Id.*  And third, the activity must not be

2  "de minimis."  *Id.*

3      The Court now turns to the parties' arguments concerning *Bamonte*.  The first question is

4  whether the Court should reconsider its prior rulings in light of *Bamonte*.  Defendant and

5  Plaintiffs each assert that parts of the Court's earlier rulings in this case should be revisited.

6  Defendant argues that, under *Bamonte*, Plaintiffs' donning and doffing was not "integral and

7  indispensable," so the Court should reconsider its denial of summary judgment on Plaintiffs'

8  donning and doffing claim.  Plaintiffs argue that the Court should reconsider its holding that

9  certain Plaintiffs' time spent donning and doffing of "non-unique protective gear" was de

10 minimis and therefore not compensable.

11      The parties' requests for reconsideration are unpersuasive.

12

13 **1.1    Defendant's Argument**

14

15      On the Court's invitation, Defendant filed a brief concerning the effect of *Bamonte* on

16 this case.  Though Defendant has not filed any formal motions concerning *Bamonte*, Defendant

17 stated that it intended to file three such motions.  First, Defendant stated that it intends to file a

18 motion asking the Court "to reconsider its previous order . . . denying the County's Motion for

19 Summary Judgment as to Plaintiffs' claim for unpaid overtime for donning and doffing their

20 uniforms and equipment."  (Defendant's Brief re *Bamonte* at 1:15-19.)  Second, Defendant

21 stated it would "renew[] its Motion for Judgment as a Matter of Law . . . seek[ing] entry of

22 judgment on Plaintiffs' claim for donning and doffing their uniforms and equipment."  (*Id.* at

23 1:23-26.)  And third, Defendant stated that it would move for a partial new trial on Plaintiffs'

24 donning and doffing claim.  (*Id.* at 2:4-5.)

25      Defendant's argument turns on whether or not the donning and doffing of uniforms and

26 equipment is "integral and dispensable" to Plaintiffs' principal activities.  To be integral and

27 indispensable, activity must be "necessary to the principal work performed" and "done for the

28 benefit of the employer."  *Bamonte*, 598 F.3d at 1225 (quoting *Alvarez*, 339 F.3d at 902-03).

*Bamonte* found that police officers asserting donning and doffing claims failed to meet this requirement.  While *Bamonte* also emphasized that the integral and indispensable inquiry is context-specific, under the specific facts of this case, Plaintiffs' donning and doffing is not integral and indispensable.

Though no formal motions have been filed, it will be helpful to discuss here the effect of *Bamonte*.  After reviewing the parties' briefs, it appears that the motions Defendant might file will be unsuccessful.

Defendant argues that the Court should grant judgment or a partial new trial on Plaintiffs' donning and doffing claim.  It argues that "[t]here was not sufficient evidence to support the jury's finding that the donning and doffing of uniforms and equipment was an integral and indispensable duty."  (Defendant's Brief re *Bamonte* at 14:13-15.)  The Court disagrees.

To be integral and indispensable, activity must be "necessary to the principal work performed" and "done for the benefit of the employer."  *Bamonte*, 598 F.3d at 1225 (quoting Alvarez, 339 F.3d at 902-03).  *Bamonte* found that police officers asserting donning and doffing claims failed to meet this requirement.  But this case is distinguishable from *Bamonte*.

In *Bamonte*, the Court found that the officers' claims failed because the defendant did not require that the officers donned and doffed their uniforms on-premises, and there was no evidence that donning and doffing benefitted the defendant.  *See id.* at 1226.  Unlike in *Bamonte*, Plaintiffs here submitted sufficient evidence to overcome these deficiencies.

The dissent in *Bamonte* specifically recognized that donning and doffing of police uniforms and equipment may be compensable if there is a de facto policy requiring donning and doffing on premises.  *See id.* at 1236 (Gould, J., dissenting) ("The majority endorses [the de facto policy] argument by explaining that employees 'must have the ability to don and doff their gear at home, not just the option.'").  Here, the Court found that summary judgment was inappropriate because a genuine factual issue existed concerning whether Defendant had such a de facto policy.  (Doc. 134 at 10:25-27.)  Further, the Court instructed the jury that "[d]onning and doffing should be considered integral and indispensable . . . only if it is required to be done on the premises 'by rules of the employer or by the nature of the work.'"  (Special Jury

4

1   Instruction No. 9.)  And the Court also instructed the jury that an employer may have a de facto

2   requirement of on premises donning and doffing.  (Special Jury Instruction No. 41.)  Under these

3   instructions, the jury found that the donning and doffing of uniforms and equipment is integral

4   and indispensable.  (Special Verdict 2:4-9.)

5       There was sufficient evidence to support a reasonable jury's finding that Defendant had a

6   de facto policy requiring on premises donning and doffing.  Plaintiff Chris Angelo testified that

7   he was trained to put his uniform and gear on at the station.  (Plaintiffs' Brief re *Bamonte*, Ex. 4

8   at 97:12-14.)  He also testified that when he became a training officer, he trained deputies the

9   same way.  (*Id.* 111:3-16.)  Plaintiff Jose Carcamo also testified that his training officers trained

10  him to don and doff at the police station.  (Plaintiffs' Brief re *Bamonte*, Ex. 5 at 202:9-12.)

11  Further, Plaintiff Glenn Johnson testified that he was trained to don and doff on premises.

12  (Plaintiffs' Brief re *Bamonte*, Ex. 4 at 126:2-7.)  And Plaintiff David Granito testified as follows:

13

14      Q.    Did you always put on your uniform and gear at the station?
        A.    Yes.
15      Q.    Why?
        A.    That was the way I was trained . . . .
16

17  (Plaintiffs' Brief re *Bamonte*, Ex. 5 at 24:12-16.)

18      This evidence of training supports the finding of a de facto policy requiring on premises

19  donning and doffing.  Even further, there was ample testimony that, with few exceptions,

20  deputies did in fact don and doff on premises.  (*See* Plaintiffs' Brief re *Bamonte* at 10:9-21 and

21  accompanying footnotes.)  The fact that some deputies donned and doffed at home does not

22  preclude the finding of a de facto policy requiring on premises donning and doffing.  *See Martin*

23  *v. City of Richmond*, 504 F.Supp.2d 766, 776 (N.D. Cal. 2007) ("[T]he Court is unpersuaded that

24  summary judgment is appropriate simply because an officer or two may actually don and doff

25  his gear at home.")

26      Further, there was also sufficient evidence that donning and doffing at work was done for

27  Defendant's benefit.  Substantial testimony shows that the policy requiring on-site donning and

28  doffing promoted Defendant's goals of protecting the public, for example by having deputies "be

ready to respond to a critical call at the time the shift started." (*See, e.g.*, Plaintiffs' Brief re *Bamonte* at 11, n.43.)  Further, Plaintiffs produced evidence that a sergeant would "yell at" deputies caught commuting to work without covering up their patches because this created an "officer's safety issue." (*See* Plaintiffs' Brief re *Bamonte* at 44:10-19.)  Even further, the fact that Defendant required Plaintiffs to don and doff at work supports a finding that donning and doffing and work benefitted Defendant.  *See Bamonte*, 598 F.3d at 1231 ("Although logical reasons exist for the police officers not to avail themselves of the at-home option, such as . . . safety concerns, . . . these reasons reflect preferences rather than mandates.").

In sum, *Bamonte* does not require that judgment be entered for Defendant on Plaintiffs' donning and doffing claim.  This conclusion is supported by the fact that the jury instructions were consistent with the rules adopted in *Bamonte*.  Moreover, the jury's findings were also not against the clear weight of the evidence, so a partial new trial is inappropriate.

### 1.2    Plaintiffs' Argument

Plaintiffs argue that the Court should reconsider its ruling that certain activities were de minimis. (Plaintiffs' Brief re *Bamonte* 15:10-18.)  Plaintiffs' argument appears to rely solely on the statement in *Bamonte* that the compensability for donning and doffing generic protective gear requires a context-specific inquiry. (*See id.*)  Plaintiffs' argument is unpersuasive.  The mere fact that a certain issue is "context-specific" does not mean that summary judgment can never be granted on that issue.  *Bamonte* itself provides an example of where a context-specific inquiry can lead to summary judgment concerning the compensability of a donning and doffing claim.  Here, the Court ruled that donning and doffing of certain non-unique protective gear was de minimis and not compensable as a matter of law under the specific factual context of this case.  Nothing in *Bamonte* requires reconsideration of that ruling.

1    **2.    CLAIM PERIOD**

2

3        The Court must decide the period for which Plaintiffs may claim damages.

4        Here's the background.  This action was originally filed by one Plaintiff.  A few amended

5    complaints were filed.  All but one of the amended complaints added new Plaintiffs to this case.

6        Plaintiffs argue that each Plaintiff is entitled to damages for unpaid overtime beginning

7    three years before the date the original complaint was filed.  Defendant argues that Plaintiffs

8    may only claim such damages beginning three years before the date each plaintiff was added to

9    this case.  The Court agrees with Defendant.

10       Defendant's argument depends on whether this case was brought as a collective action

11   under the FLSA.  In a collective action for willful FLSA violations, where plaintiffs join a

12   lawsuit after the filing of the original complaint, they may only claim damages starting three

13   years from the date they joined the lawsuit.  *See Bonilla v. Las Vegas Cigar Co.*, 61 F. Supp. 2d

14   1129, 1138-40 (D. Nev. 1999).  Here, the Court finds that this case was brought as a collective

15   action because Plaintiffs' pleadings "purport[ed] to sue on behalf of themselves and 'others

16   similarly situated.'"  *See id.* at 1138.  Thus, Defendant is correct that Plaintiffs may only claim

17   damages beginning three years before the date they joined this case.

18

19   **3.    BRIEFING START TIMES**

20

21       The parties next dispute whether the Court should subtract 10 minutes from the overall

22   time for which Defendant must pay Plaintiffs.  Defendant asserts that shift briefings started 10

23   minutes after Plaintiffs' shifts began, and Plaintiffs have already been paid for those 10 minutes.

24   Defendant then argues that Plaintiffs spent those 10 minutes donning, doffing, and readying their

25   patrol cars, so they are not entitled to double payment for those 10 minutes.  Defendant's

26   argument fails.

27       The key failure of Defendant's argument is that Defendant cannot accurately establish

28   how much time was spent working before shift briefings.  Defendant argues that the failure to

1   clarify what happened before shift briefings isn't Defendant's problem.  Rather, it contends, the

2   burden is on *Plaintiffs* to show that they performed uncompensated work, and Plaintiffs fail to

3   show that they were doing something besides donning, doffing, or readying during the 10

4   minutes before briefing.  According to Defendant, this means that Plaintiffs failed to carry their

5   burden of proving that they were donning, doffing, or readying at some time other than the 10

6   minutes before briefing.  So, Defendant concludes, since they've already been paid for those 10

7   minutes, they cannot recover for that time here.

8          Not so, Plaintiffs counter.  They argue that Defendant failed to meet its duty of keeping

9   accurate records concerning the time Plaintiffs worked, so it's Defendant's fault we don't know

10  exactly what happened before shift briefing.  Thus, Plaintiffs continue, under Supreme Court

11  precedent, the burden is on Defendant to present sufficient evidence to show that Plaintiffs

12  donned, doffed, or readied their patrol cars during ten minutes between start of shift and shift

13  briefing.

14         Plaintiffs are correct.  An employee seeking to recover unpaid overtime under the FLSA

15  "has the burden of proving that he performed work for which he was not properly compensated."

16  *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), *superseded on other grounds*

17  *as stated in IBP, Inc. v. Alvarez*, 546 U.S. 21, 26-27, 41 (2005); *Brock v. Seto*, 790 F.2d 1446,

18  1447-48 (9th Cir. 1986) (quoting *Anderson*).  But

19              [w]here the employer's records are inaccurate or inadequate and the
              employee cannot offer convincing substitutes, . . . the solution . . . is
20            not to penalize the employee by denying him any recovery on the
              ground that he is unable to prove the precise extent of
21            uncompensated work.  Such a result would place a premium on an
              employer's failure to keep proper records . . .; it would allow the
22            employer to keep the benefits of an employee's labors without
              paying due compensation as contemplated by the [FLSA].
23

24  *Anderson*, 328 U.S. at 687.

25         Where an employer fails to accurately record overtime hours worked, "an employee has

26  carried out his burden if he proves that he has in fact performed work for which he was

27  improperly compensated and if he produces sufficient evidence to show the amount and extent

28  of that work as a matter of just and reasonable inference."  *Id.*  "The burden then shifts to the

1   employer to show the precise number of hours worked or to present evidence sufficient to negate

2   'the reasonableness of the inference to be drawn from the employee's evidence.'"  *Brock*, 790

3   F.2d at 1448 (quoting *Anderson*, 328 U.S. at 688).  "If the employer fails to make such a

4   showing, the court 'may then award damages to the employee, even though the result be only

5   approximate."  *Id.* (quoting *Anderson*, 328 U.S. at 688) (emphasis added in *Brock*).

6         Here, the Court finds that Defendant failed to keep accurate and adequate records of the

7   time worked by Plaintiffs.  Defendant argues that "the *Anderson* burden shifting analysis does

8   not come into play [here] because there is no dispute that [there are] accurate records of the

9   hours for which plaintiffs were actually paid."  (Defendant's Opening Brief at 11:9-11.)  But the

10  fact that Defendant's records may accurately reflect the time for which Plaintiffs were paid does

11  not mean that Defendant kept accurate records concerning the time Plaintiffs worked.  The Court

12  finds that Defendant has not identified accurate and adequate records concerning the time

13  Plaintiffs worked.

14        The Court further finds that Plaintiffs proved they "performed work for which [they were]

15  improperly compensated" and produced "sufficient evidence to show the amount and extent of

16  that work as a matter of just and reasonable inference."  *Anderson*, 328 U.S. at 687.  Plaintiffs

17  present evidence that they typically arrived well before the start of their shifts.  This evidence is

18  in Plaintiffs' "mobile data computer" ("MDC") logs.

19        Defendant argues that these MDC logs are irrelevant, (Defendant's Reply at 10-11 n.2),

20  but Defendant is wrong.  These logs suggest that Plaintiffs were working at the time they logged

21  in.  Often, these logs show Plaintiffs logged in before their shifts were scheduled to start.  Take,

22  for example, Deputy David Granito's work during the pay period of May 26, 2005 through June

23  6, 2006.  During this period, Deputy Granito was logged into his MDC at 6:44, 6:43, 6:35, 6:33,

24  and 6:39 on certain days that his shift was scheduled to start at 7:00.  (Joint Exhibit 204-005.)

25  Plaintiffs produce similar evidence for the other deputies.  For further example, Plaintiff Bradley

26  Decker persuasively testified that he arrived at the Perris station well before his shift to don his

27  uniform and equipment and prepare his patrol car, and his MDC logs support this, showing that

28  he generally logged into his patrol car around 20 to 40 minutes before shift.  (*See* Joint Exhibit

1    195.)  This evidence permits a just and reasonable inference that Plaintiffs typically arrived at
2    work well before their shifts.

3          Accordingly, in calculating unpaid overtime, Defendant may not subtract 10 minutes from
4    Plaintiffs' time worked.

5

6    **4.     COMPENSATORY TIME**

7

8          The next issue concerns "compensatory time."  Compensatory time is a type of
9    compensation for overtime.  When Plaintiffs worked overtime, Plaintiffs had the option of
10   receiving cash payments at one and a half times their regular rate of pay or compensatory time.
11   If they selected compensatory time, they received 1.5 hours of paid time off instead of cash
12   payments.  Compensatory time is also known as "compensatory time off" ("CTO") and "comp
13   time worked" ("CTW").

14         The parties agree that hours worked that are paid through compensatory time count
15   toward calculating the total number of hours worked for a pay period.  (*See* Plaintiffs' Reply
16   15:3-6.)  But they dispute whether Defendant may be credited for paying overtime when it
17   compensated Plaintiffs with compensatory time instead of cash payments.  Defendant argues
18   that, "[w]here CTW was awarded at a rate of time and one-half even though the Plaintiff did not
19   exceed the 86-hour threshold for the work period, Defendant is entitled to a credit for contractual
20   overtime."  (Defendant's Reply 18:6-9.)  The Court agrees.

21         One court has squarely addressed this issue.  It held that the defendant should be credited
22   "for compensatory time awarded as compensation for contractual overtime."  *Scott v. City of*
23   *New York*, 592 F. Supp. 2d 475, 486-87 (S.D.N.Y. 2008).  To reach this conclusion, the *Scott*
24   court performed a thorough statutory analysis of relevant FLSA provisions and federal
25   regulations.  *Id.* at 485-86.

26         It is unnecessary to duplicate *Scott*'s persuasive analysis here.  It suffices to note that the
27   FLSA permits the use of compensatory time "in lieu of" cash payments for overtime, *see* 29
28   U.S.C. § 207(o), and states that "[e]xtra compensation paid [such as compensatory time under 29

1   U.S.C. section 207(e)(7)] shall be creditable toward overtime compensation payable pursuant to

2   [29 U.S.C. section 207]," *see* 29 U.S.C. § 207(h)(2).  Thus, the Court concludes that, where

3   compensatory time was awarded at 1.5 times the hours worked even though the Plaintiff did not

4   exceed the 86 hour threshold, Defendant should receive a credit "for compensatory time awarded

5   as compensation for contractual overtime."  *See Scott*, 592 F. Supp. 2d at 486-87.

6

7   **5.     HLR PAY**

8

9          The next issue involves the use of "HLR pay."  HLR pay was given to Plaintiffs when

10  they worked on holidays.  Specifically, when Plaintiffs worked holidays, they received an extra

11  time and a half worth of compensation for the hours worked up to 12 hours of extra

12  compensation.  (*See* Defendant's Statement of Undisputed Facts in Support of Motion for

13  Summary Judgment Regarding Offsets (Doc. 267)  8-10.)  Defendant argues it is entitled to

14  credit HLR pay against overtime compensation owed to Plaintiffs for donning, doffing, and

15  readying.  The Court agrees.

16         The Court previously denied Defendant summary adjudication on its argument that, as a

17  matter of law, it was entitled to receive a credit for HLR pay.  It surveyed certain statutes, cases,

18  and regulations and concluded that HLR paid in a lump sum "without regard to the number of

19  overtime hours worked" may not be credited, but HLR paid based directly on the number of

20  hours worked may be credited.  (*See* Doc. 304 at 18:7-20:8 (quoting multiple authorities).)

21  Under the evidence submitted at the time, the Court found no dispute that HLR pay was paid in a

22  lump sum, so it denied granting summary adjudication on Defendant's argument that it was

23  entitled to a credit for HLR pay.

24         But now Defendant has offered evidence to support its position.  Defendant offers the

25  trial testimony of Vicki Pounders, an accounting assistant that involved with the payroll for the

26  Riverside County Sheriff's Department.  Ms. Pounders testified that the amount of HLR pay

27  given to Plaintiffs depended on the amount of hours they worked.  The following exchange took

28

1  place between counsel (questioning) and Ms. Pounders (answering):

2         Q:    If an employee worked eight hours . . . on a holiday, how
              much HLR pay would they receive?
3         A:    Twelve.
          Q:    If an employee worked six hours on a holiday, how much
4         HLR pay would they receive?
          A:    Nine.
5         . . .
          Q:    And anything less than eight hours, they are going to receive
6         less -- what will show on their time sheet will be less than 12 hours
          of HLR pay?
7         A:    Yes.

8  (Defendant's Exhibit 10 at 27:11-28:12.)  This testimony establishes that HLR pay was based on

9  the number of hours Plaintiffs worked, and thus is creditable.  *See* 29 U.S.C. § 207(e)(6)

10 (premium compensation "paid for work" on holidays is creditable); *Dooley v. Liberty Mutual*

11 *Ins. Co.*, 369 F. Supp. 2d 81, 84 (D. Mass 2005) ("[T]he statutory term 'premium rate' refers to

12 an hourly rate of pay, rather than a lump sum.").  Ms. Pounder's testimony is further consistent

13 with the relevant MOU's, which state that when Plaintiffs worked on paid holidays, they were

14 "entitled to not more than twelve (12) hours compensation at the rate of one and one-half (1-1/2)

15 times the employee's regular rate."  (Doc. 267 10 (emphasis added).)  Plaintiffs offer no

16 persuasive evidence to counter Ms. Pounders's testimony.

17        Plaintiffs argue that, in the Order denying Defendant's request for summary adjudication

18 on the HLR pay issue, the Court already decided as a matter of law that Defendant is not entitled

19 to a credit for HLR pay.  Plaintiffs are wrong.  Plaintiffs did not seek summary adjudication, and

20 the Court did not grant Plaintiffs summary adjudication on this issue.  Further, the Court denied

21 summary adjudication based on the evidence submitted at that time, when the only evidence

22 submitted was that Plaintiffs were paid 12 hours of HLR pay every time they received HLR pay.

23 Because Plaintiffs did not seek summary adjudication, Plaintiffs cannot complain that the

24 evidence at trial developed to support Defendant on this issue.

25        The Court concludes that Defendant is entitled to a credit for HLR pay.  *See* 29 U.S.C. §

26 207(e)(6) and (h)(2).

27

28

1   **6.      COURT TIME**

2

3        The next issue concerns payments for "court time" – the time Plaintiffs spent appearing in

4   court on a regularly scheduled day off.  Here, Plaintiffs were given at least four hours pay for

5   court time regardless of whether they actually spent four hours in court.  The parties dispute

6   whether, when determining how much Plaintiffs worked in a pay period, the Court should count

7   four hours for each court appearance or the time actually worked for court appearances.

8   Defendant argues that "Plaintiffs should only receive credit for the hours actually worked,"

9   (Defendant's Opening Brief at 21:2-4), and the Court agrees.

10       The FLSA "does not require an employer to count hours not actually worked . . . in

11  determining whether" a pay period's threshold has been met.  *Atlanta Prof'l Firefighters Union,*

12  *Local 134 v. City of Atlanta*, 920 F.2d 800, 860 (11th Cir. 1991).  Thus, where Plaintiffs worked

13  less than four hours appearing in court, four hours should not be counted toward the pay period's

14  threshold.  Rather, Plaintiffs should receive credit only for the hours actually worked.

15       Plaintiffs argue that it will be costly and inefficient to require the parties to sift through

16  evidence to determine the amount of time actually worked for court appearances.  (*See* Plaintiffs'

17  Reply 14:5-25.)  But this is no reason to require Defendant to pay for time that Plaintiffs didn't

18  actually work.  True, deciphering the time actually worked may be costly, time consuming, and

19  inefficient.  But if that's what the FLSA requires, such deciphering cannot be avoided.  On the

20  other hand, there may not be sufficient evidence to establish the exact hours worked by Plaintiffs

21  when appearing in court.  Where Defendant has not kept accurate records of Plaintiffs' actual

22  time worked for court appearance, the *Anderson* burden-shifting rule may apply, and it may be a

23  reasonable inference that Plaintiffs' hours worked are largely equivalent to the four hours paid.

24       Plaintiffs also assert an argument that four hours should count as time actually worked

25  because, even though Plaintiffs may have spent less than four hours in court, Plaintiffs spent

26  significant time commuting to and from court.  But Plaintiffs then state that they "do not seek

27  compensation for the time spent traveling to and from court," (Plaintiffs' Reply 22:11-12), so

28

1   their argument is confusing and unpersuasive.

2        In sum, concerning court time, the Court concludes that Plaintiffs should only receive

3   credit for the hours actually worked.

4

5   **7.    XTR TIME**

6

7   The next issue concerns "XTR time."  According to Defendant, "'XTR' time stands for extra or

8   additional time worked by Plaintiffs for third party employers, and not for the County of

9   Riverside and not for the Riverside County Sheriff's Department."  (Defendant's Opening Brief

10  at 23:17-19.)  Plaintiffs state that their "payroll records show that some deputies worked

11  additional time outside their regular shifts and were paid by [Defendant] under the code 'XTR.'"

12  (Plaintiffs' Opening Brief at 23:10-12.)

13       The parties now dispute whether XTR time should be counted in calculating the amount

14  of hours deputies worked for overtime purposes, and thus Plaintiffs' amount of damages for

15  unpaid overtime.  Plaintiffs argue that XTR time should be counted in such calculations.

16  Defendant argues that Plaintiffs have not "introduced a single exhibit or asked any questions of

17  any of the witnesses" concerning XTR time and "Plaintiffs' Complaint also does not include any

18  reference to XTR time."  (Defendant's Opening Brief at 23:27-24:9.)  Thus, Defendant argues

19  that XTR time should be excluded from damages calculations.  (Defendant's Opening Brief at

20  24:6-9.)  Plaintiffs' argument is persuasive.

21       After the end of phase two of the trial, the Court issued a minute order stating that, "[t]he

22  evidence to be received in Phase 2 is closed except for the filing of viable summaries under

23  [Federal] Rule [of Evidence] 1006 once the Court has ruled on applicable time periods."  (Doc.

24  355.)  Plaintiffs state that they will submit summaries of time worked to calculate Plaintiffs' time

25  worked, and such summaries will include XTR time.  The Court finds that the inclusion of XTR

26  time in such summaries is appropriate.

27       This conclusion is bolstered by the fact that XTR time was not raised until now.  It is

28

1    undisputed that the parties were not aware of evidence concerning XTR time until October 2009,

2    very shortly before the phase two trial.  It is also undisputed that the reason for this was, as

3    Plaintiffs state, Defendant "belatedly produced thousands of pages of" electronic payroll data

4    that shows "the number of hours worked and paid by [Defendant] under payroll code 'XTR.'"

5    (Plaintiffs' Reply 15:20-23.)  As Defendant is at fault for belatedly producing the evidence

6    concerning XTR time, it cannot complaint that XTR time is included in Plaintiffs' calculation of

7    hours worked.

8        The Court rejects Defendant's argument that XTR time should be excluded from damages

9    calculations because Plaintiffs did not specifically raise XTR time as an issue in their Complaint,

10   in pretrial documents, or at trial.

11       Defendant also asserts an alternative argument.  It argues that XTR time cannot count as

12   hours worked because the "special detail exemption" exempts such hours from being counted

13   toward overtime.  *See* 29 U.S.C. § 207(p)(1).  Plaintiffs argue that Defendant waived its ability

14   to rely on the special detail exemption to exclude XTR time as hours worked.  Specifically,

15   Plaintiffs argue that the special detail exemption is an affirmative defense, and it was waived by

16   Defendant's failure to plead it in Defendant's answer.  The Court agrees with Plaintiffs.

17       Courts addressing the issue have recognized that the special detail exemption is an

18   affirmative defense that must be pleaded and proved by a defendant.  *See Johnson v. United*

19   *Gov't of Wyandotte County*, 127 F. Supp. 2d 1181 (D. Kan. 2000); *Specht v. City of Sioux Falls*,

20   No. CIV. 08-4124, 2010 WL 759014, at *1-2 (D. S.D. Feb. 26, 2010); *Jackson v. City of San*

21   *Antonio*, No. SA-03-CA-0049-RF, 2006 WL 2548545 (W.D. Tex. Aug. 31, 2006).  The Court

22   agrees with these courts.  It is undisputed that the special detail rule is an exemption, and "the

23   application of an exemption under the Fair Labor Standards Act is a matter of affirmative

24   defense on which the employer has the burden of proof."  *Corning Glass Works v. Brennan*, 417

25   U.S. 188, 196-97 (1974).

26       Because the special detail exemption is an affirmative defense, and it is not pleaded in

27   Defendant's answer, it is waived.  *See* Fed. R. Civ. P. 8(c).  Moreover, though Defendant has not

28

1    even filed a formal motion to amend its answer, the Court finds that Defendant should not be

2    permitted to amend its answer to include the special detail exemption defense.  Federal Rule of

3    Civil Procedure 15(b) governs the amendment of pleadings after trial.  It allows amendments

4    during trial if "a party objects that evidence is not within the issues raised in the pleadings," or

5    after trial if "an issue not raised by the pleadings is tried by the parties' express or implied

6    consent."  Fed. R. Civ. P. 15(b).  Under Rule 15, "[f]actors such as the need to reopen discovery,

7    delay in the proceedings or additional litigation expenses as a result of the amendment support a

8    finding of prejudice."  *Van Dyck v. Katz*, Nos. CIV.3:01CV1372(AVC),

9    CIV.3:01CV1373(AVC), 289 B.R. 304, 316 (D. Conn. Feb. 28, 2003) (citing *Owens v. Kaiser*

10   *Foundation Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001)).  *See also Lockheed Martin*

11   *Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) ("A need to reopen

12   discovery and therefore delay the proceedings supports a district court's finding of prejudice

13   from a delayed motion to amend . . . .").

14       Here, these factors strongly support a finding of prejudice, which strongly weighs against

15   allowing amendment of Defendant's answer.  To reiterate, because the special detail exemption

16   is an affirmative defense, it must be pleaded and proved by the defendant.  *See Jackson*, 2006

17   WL 2548545, at * 3.  Here there is the type of prejudice that warrants denying a motion to

18   amend, especially after both phases of the trial and years of litigation have passed.

19       In sum, the Court finds that XTR time counts as hours worked in Plaintiffs' overtime

20   calculation.

21

22

23

24

25

26

27   **CONCLUSION**

28

The Court ORDERS the parties to appear at a status conference on October 4, 2010 at 9:00 a.m. to discuss the status of this case following this Order.

**IT IS SO ORDERED.**

**DATED: September 22, 2010**

_____

Andrew J. Guilford
United States District Judge