Brian P. Walter, Bar No. 171429
bwalter@lcwlegal.com
Laura J. Kalty, Bar No. 199520
lkalty@lcwlegal.com
LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 West Century Boulevard, Suite 500
Los Angeles, California 90045
Telephone: (310) 981-2000
Facsimile: (310) 337-0837

Attorneys for Defendant
COUNTY OF RIVERSIDE

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| RONALD FARRIS, ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF RIVERSIDE, <br><br> Defendant. | Case No. CV05-06166 AJG CTx <br><br> Assigned To Judge Andrew J. Guilford <br><br> **DEFENDANT COUNTY OF RIVERSIDE'S NOTICE OF MOTION AND RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW, OR IN THE ALTERNATIVE, MOTION FOR PARTIAL NEW TRIAL** <br><br> [Fed. R. Civ. P. Rules 50(b), 59] <br><br> Phase One Trial Date: May 6-21, 2008 <br> Jury Verdict: May 22, 2008 <br> Phase Two Trial Date: Nov. 3-4, 2009 <br> Order after Phase Two: Sept. 22, 2010 <br><br> Judgment Entered: April 26, 2011 |

**TO THE COURT, PLAINTIFFS AND THEIR ATTORNEYS OF RECORD:**

NOTICE IS HEREBY GIVEN that Defendant COUNTY OF RIVERSIDE will and hereby does renew its Motion for Judgment as a Matter of Law pursuant to Rule 50(b) of the Federal Rules of Civil Procedure.[1] Specifically, Defendant seeks entry of judgment in its favor on Plaintiffs' claim for overtime compensation

---

[1] On or about May 20, 2011, the County and Plaintiffs filed a joint stipulation, agreeing to a stipulated amount of attorney's fees and costs and to no appeal of the judgment. (Document No. 414.) If no party files an appeal, the County will likely withdraw this motion.

# TABLE OF AUTHORITIES
## (continued)

Page

**Rules**

29 California Federal Rules § 790.8 ...................................................................... 11, 14, 15

29 California Federal Rules § 790.8(c) ...................................................................... 11, 14

Federal Rules of Civil Procedure Rule 50 .................................................................. 1, 9, 10

Federal Rules of Civil Procedure Rule 50(a) ................................................................... 1, 9

Federal Rules of Civil Procedure Rule 50(b) ....................................................................... 9

Federal Rules of Civil Procedure Rule 50(c)(1) ................................................................ 10

Federal Rules of Civil Procedure 59 .................................................................................. 13

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND PROCEDURAL HISTORY

The first phase of trial in this matter commenced on May 6, 2008. On May 20, 2008, the COUNTY filed a Motion for Entry of Judgment as a Matter of Law pursuant to Rule 50(a). On May 21, 2008, the case went to the Jury. On May 22, 2008, the Jury reached a verdict on Plaintiffs' Claims for violation of the Fair Labor Standards Act ("FLSA") and Retaliation.

As to the donning and doffing portion of Plaintiffs' FLSA claim, the Jury found that donning/doffing a uniform and equipment is integral and indispensable to Plaintiffs' principle law enforcement activities, and that the time necessarily spent for all Plaintiffs was 9 minutes as to uniforms, and 11 minutes as to patrol, court services and corrections transportation equipment; 6 minutes as to sworn corrections equipment; and, 2 minutes as to non-sworn corrections equipment. The Jury also found that the COUNTY's violation of the FLSA was willful as to the donning/doffing of uniforms and equipment. To date, there has not been a ruling on the COUNTY's Rule 50(a) Motion.

The second phase of trial addressed damages and the County's affirmative defenses. Prior to the second phase of trial, the County filed a series of motions for summary judgment as to its affirmative defenses. The Court granted the County's motion as to the section 207(k) exemption and found that the County adopted and had been utilizing a 14-day work period and that Plaintiffs were not entitled to recover "gap time." The Court also granted the County's motion regarding *de minimis* time, finding that the 9 minutes deputies spent donning and doffing their uniforms, and the 6 minutes and 2 minutes corrections deputies spent donning and doffing their equipment was *de minimis*, and therefore not compensable. The Court granted, in part, the County's motion as to section 207(h) offsets regarding contractual overtime.

///

The second phase of trial then took place on November 3 and 4, 2009. The Court issued its Order Addressing Issues Remaining After Second Trial Phase on September 22, 2010. The Court found in favor of the County on the issue of section 207(h) offsets for holiday pay ("HLR"), the applicable time period for damages, compensatory time and court time; the Court found in favor of Plaintiffs on the issue of briefing start times and XTR time. Following the calculation of damages in light of the jury verdict and the Court's Orders, judgment was entered on April 26, 2011.

For the reasons detailed herein, there was insufficient evidence for a reasonable jury to have found that Plaintiffs' uniforms and equipment were integral and indispensable to Plaintiffs' principle law enforcement activities. Additionally, as a matter of law, there was insufficient evidence to support any liability as to the donning and doffing portion of Plaintiffs' FLSA claim, let alone any willful violation of the FLSA. Accordingly, this Court should grant the County's Motion and enter judgment in favor of Defendant as to the donning and doffing portion of Plaintiffs' FLSA claim.

## II. THE NINTH CIRCUIT'S HOLDING IN *BAMONTE* REQUIRES A FINDING THAT DONNING AND DOFFING OF POLICE UNIFORMS AND EQUIPMENT IS NOT COMPENSABLE

### A. Prior to *Bamonte*, There Were Inconsistent Positions in the Ninth Circuit Regarding Whether Time Spent Donning and Doffing Uniforms and Equipment Was Compensable Under the FLSA

Under the FLSA, employers must pay employees for all hours "worked." *Alvarez v. IBP, Inc.*, 339 F.3d 894, 902 (9th Cir. 2003). The Supreme Court defines "work" as "physical or mental exertion...controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer." *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944). The Portal-to-Portal Act "relieves an employer of responsibility for compensating employees for activities which are preliminary or postliminary to the principal activity or activities of a given job." *Alvarez, supra* at 902. "Preliminary" and

"postliminary" activities are compensable only if the activities are an "integral and indispensable" part of the principal activities for which the workers are employed. *Steiner v. Mitchell*, 350 U.S. 247, 256 (1956).

Prior to the Ninth Circuit's decision in *Bamonte v. City of Mesa*, 598 F.3d 1217, the court addressed the issue of compensability of donning and doffing activities in several notable cases. The Department of Labor also addressed the issue of compensability for donning and doffing of clothing and gear under the FLSA. The DOL's longstanding position is that if employees have the *option and the ability* to change into the required gear at home, changing into that gear is not a principal activity (*i.e.*, not compensable under the FLSA), even when it takes place at the employer's premises. The DOL clarified this in a May 31, 2006 wage and hour advisory memorandum that interpreted the Supreme Court's decision in *IBP v. Alvarez*. Wage &Hour Adv. Mem.No.2006-2 at 3.

**B.   In *Bamonte*, the Ninth Circuit Agreed with the *Abbe* Court and the DOL and Imposed a Location Requirement for Determining Compensability of Donning and Doffing Uniforms and Equipment**

In *Bamonte*, City of Mesa police officers sought compensation for the time they spent donning and doffing their uniforms and related gear. *Bamonte, supra* at 1220. Officers were provided with a locker room at the police station and it was their *preference* to don and doff their uniform and related gear in the locker room, based on seven considerations. *Id.* Indeed, there was no requirement imposed by their employer to don or doff at their employer's premises. The district court granted the City of Mesa's motion for summary judgment, holding that because the plaintiffs had the option and ability to don and doff their uniforms and gear at home, the activity of donning and doffing uniforms and gear at the workplace was not compensable. *Id.*

On appeal, the Ninth Circuit relied on the three-stage inquiry for determining compensability of donning and doffing activities, which it previously articulated in *Alvarez. Bamonte, supra* at 1224-1225. The first stage addresses whether the

donning and doffing activities constitute "work" that is controlled or required by the employer. *Id.* The second stage addresses whether the donning and doffing activities are "integral and indispensable" duties, *i.e.* activities that are necessary to the principal work performed and done for the benefit of the employer. *Id.* The third stage addresses whether the donning and doffing activities were *de minimis*. *Id.* The Ninth Circuit focused its inquiry on the second stage in light of the plaintiffs' argument that *Alvarez* could be interpreted as supporting a finding of compensability as a function of the employer's requirement that officers wear a uniform and related gear. *Id.*

Ultimately, the Ninth Circuit followed the position of the court in *Abbe v. City of San Diego*, 2007 WL 4146696 (S.D.Cal. 2007) and held that the relevant inquiry is not whether the nature of the job requires donning and doffing of the uniform and gear, but rather whether the nature of the job required the process of donning and doffing to occur *on the employer's premises. Bamonte, supra* at 8. Specifically, the Ninth Circuit found that the facts in *Bamonte* were "diametrically opposed" to those facts in *Steiner, Alvarez,* and *Ballaris v. Wacker Siltronic Corp.*, 370 F.3d 901 (9th Cir. 2004). *Id.* at 1225-1226. Namely, in those cases, the employers *mandated* donning and doffing at the employer's premises. *Id.* The *Bamonte* plaintiffs did not, however, identify a law, rule, regulation or obligation mandating on-premises donning and doffing. *Id.* Moreover, the Ninth Circuit determined that the on-premises donning and doffing of the Mesa officers was for their benefit and not their employer's benefit, finding that there was no evidence that the gear the plaintiffs donned and doffed is less effective if it is donned away from the employer's premises. *Id.*

Therefore, in *Bamonte*, the Ninth Circuit imposed a location requirement for determining whether donning and doffing public safety uniforms and related gear is compensable under the FLSA. *Bamonte, supra* at 1228-1231. Specifically, if officers and deputies have the option and ability to don and doff their uniforms and

4

equipment off of the employer's premises, then their donning and doffing activities, even if performed at the employer's premises due to personal preference, are not compensable as "work" under the FLSA. *Id.*

### C. Plaintiffs Had the *Option and Ability* to Don and Doff Their Uniforms and Equipment Off of Department Premises

Plaintiffs argued that the nature of the job required Plaintiffs to dress at work. However, the *Bamonte* holding establishes that the evidence offered at trial can only support a verdict in favor of Defendant on donning/doffing. Given the overwhelming evidence that deputies at the Department can and do dress at home, the only reasonable conclusion for the Court and the jury was that there was no requirement to dress at work and, therefore, donning and doffing of uniforms and equipment at work could not reasonably be found to be integral and indispensable to police activities.

There was testimony by several witnesses that at various points in their careers, they have either partially or fully dressed into their uniforms at home.[2] Plaintiffs themselves admitted to dressing into uniform at home on a regular basis, including Barker, Carpenter, Calkins and Nunley.[3] Nunley further testified that most of the motor officers at the Southwest and Perris stations dressed in their uniforms at home. [RP, Day 9, 5/20/08, 83:8-13, 84:8-11.][4] Sgt. Stephen Brown testified about a time when the locker rooms were condemned and all deputies dressed at home for several months. [RP, Day 3, 37:22-38:10.][5]

---

[2] [Reporter's Transcript of Proceedings ("RP"), Day 6, 5/15/08, 39:18-25 (Sgt. Barton); Day 6, 5/15/08, 92:25-93:7 (Sgt. Martin); Day 6, 5/15/08, 205:8-15, 222:18-223:4 (Sgt. Reynolds); RP, Day 7, 5/16/08, 34:2-9, 37:18-38:5 (Asst.Sheriff Boyd); RP, Day 9, 5/20/08, 92:17-93:2 (Sgt. Hall).]

[3] [RP, Day 6, 5/15/08, 136:15-23; Day 7, 5/16/08, 177:10-12, 178:3-16; Day 7, 182:11-16; Day 9, 5/20/08, 82:25-83:2, 84:5-7.] Plaintiff Cloyd also admitted that he currently dresses in his uniform at home. [RP, Day 7, 5/16/08, 173:25-174:5.]

[4] Plaintiff Broussard was aware of one deputy at the Palm Desert Station who dressed at home, and arrived to the station in uniform. [RP, Day 2, 5/8/08, 133:24-134:5.] Carpenter estimated that approximately 5 employees, out of a shift of 45 employees, would come to work already dressed in their uniforms. [RP, Day 7, 5/16/08, 180:19-181:1.] Sgt. Barton testified that some deputies dress at home, and Sgt. Stephen Brown was aware of a couple of deputies who would report to the Perris station in their full uniform and gear. [RP, Day 6, 5/15/08, 39:21-22; Day 3, 5/9/08, 18:4-6.]

[5] Plaintiff McMurrich was aware of correctional deputies who would show up to the correctional facilities in their uniforms. [RP, Day 3, 5/9/08, 57:24-58:1.] McMurrich also testified that he dressed at home for one year when

5

504755.2 RI080-032

Defendant County Of Riverside's Renewed Motion for Judgment As A Matter Of Law

There was nothing inherent about the uniform or deputies' work in that uniform which necessitated donning and doffing the uniform on Department premises.[6] Former Assistant Sheriff Labahn admitted that he had gotten dressed in his uniform at home at various points throughout his career, and that the primary factor which would determine where he would get dressed was his "personal convenience." [RP, Day 3, 5/9/08, 170:4-171:5.] Sgt. Dittenhofer testified that while he was working in corrections, "a lot of them [corrections deputies] would come to work already dressed." [RP, Day 3, 5/9/08, 213:17-21; see also, Day 4, 5/13/08, RP 44:24-45:5.] Dittenhofer also confirmed that there were occasions where he dressed in his uniform at home. [RP, 5/13/08, Day 4, 45:6-14.] Ron Komers, the Human Resources Director for Riverside County, similarly testified to witnessing entire shifts of correctional deputies arriving at the Robert Presley Detention Center in uniform. [RP, Day 5. 5/14/08, 179:25-180:8.]

Additionally, there was extensive testimony, by Plaintiffs and defense witnesses alike, that there was no Department policy or other requirement which mandated that deputies dress into and out of their uniforms at work. Plaintiff/Investigator Johnson specifically answered "no" to the question "did the Department require you to get into your uniform at the station," and he further confirmed that he was not aware of any written Department policy which required deputies to get ready at work. [RP, Day 2, 5/8/08, 12:17-22.] Sgt. Pinon stated that there was no Department requirement or policy which mandated that a deputy get dressed at the station, and he confirmed that some deputies get dressed at home and some showed up to the Indio station in full uniform. [RP, Day 2, 5/8/08, 120:2-17.][7]

---

there were no locker rooms at the correctional facilities. [RP, Day 3, 74:7-24.]

[6] Boyd testified that some deputies at the Lake Elsinore station would don their uniforms off of Department premises. [RP, Day 7, 5/16/08, 38:9-11.] Labahn testified that while he was Chief Deputy overseeing court services, some deputies would report to their shifts at the courts already dressed in full uniform. [RP, Day 3, 5/9/08, 113:4-7.]

[7] Sgt. Dittenhofer testified that there was no requirement at RPDC for corrections or sheriff's personnel to get dressed at the corrections facility. [RP, Day 4, 5/13/08, 44:20-23.] Sgt. Barton responded that there was no requirement which prohibited deputies from dressing into their uniforms at home. [RP, Day 6, 5/15/08, 39:18-20.] Sgt. Martin

Plaintiff Angelo confirmed that there was no requirement to dress into uniforms at work, including during his assignments at both RPDC and Perris. [RP, Day 4, 5/13/08, 119:13-120:5.] Barker similarly testified that there was no Department policy or rule that prevented him from dressing into his uniform at home. [RP, Day 6, 5/15/08, 137:15-17.] Plaintiff Long confirmed that so long as the uniform was covered up, it was acceptable for deputies to dress at home. [RP, Day 6, 5/15/08, 232:25-233:3.] Further, Plaintiff Joslen testified that there was no requirement to get dressed at work, although it was his practice, based on "personal preference" to get dressed at work. [RP, Day 7, 5/16/08, 167:25-168:7.] Plaintiff Lugo confirmed that deputies could put on their uniforms at home if they wanted to. [RP, Day 9, 5/20/08, 52:2-4.][8] Komers testified that "there is a sheriff's policy that allows people to put on their uniforms at home....Some people put them on at home, some people put them on at work." [RP, Day 5, 5/14/08, 160:12-18; 179:21-22.] Labahn testified that the Department does not have any rule or policy that requires deputies to don or doff their uniforms on work premises. Labahn also testified about the nature of the police uniform itself, astutely noting that "where one puts on one's uniform would have no bearing on one's safety once one were on duty." [RP, Day 3, 5/9/08, 169:17-20, 169:21-25.] Boyd similarly testified that deputies were permitted to get dressed into their uniforms at home. [RP, Day 7, 5/16/08, 33:24-34:1.]

There simply can be no dispute that deputies had the option and ability to dress at home, and many of them did so, and there was no Department policy which required otherwise.

---

testified that there was nothing that required deputies to dress in uniform at the Moreno Valley station. [RP, Day 6, 5/15/08, 93:8-18.] Sgt. David Scott Brown confirmed that deputies are permitted to dress into their uniforms at home, and he was aware of a few that did so. [RP, Day 6, 5/15/08, 170:18-24.] Sgt. Reynolds stated that she was not required to dress into her uniform at the Palm Desert station. [RP, Day 6, 5/15/08, 186:2-7.]

[8] Although Plaintiff Carcamo testified that he was trained to get dressed at the station, he nonetheless admitted that "there was no directive that was told to me that I needed to dress at the station," and that he was not aware of any Department Policy that required him to dress at the station. [RP, Day 5, 5/14/08, 216:8-22.] Carcamo stated that it was a deputy's choice whether or not to dress in uniform at the station. [RP, Day 5, 5/14/08, 216:23-217:1.]

### D. There was No *De Facto* Policy Which Required Deputies to Dress at Work; Deputies Did So Because of *Personal Preference*

While Plaintiffs have argued that there was a *de facto* policy which required deputies to dress at work, Plaintiffs failed to present sufficient evidence to prove that there was any such policy. Plaintiffs did not come forward with any evidence that a single deputy at the Department was ever disciplined for dressing at home. And the primary reasons cited by the deputies who did dress at work were strikingly similar to the reasons identified by the *Bamonte* plaintiffs -- factors which the Ninth Circuit expressly found be personal preferences of employees, rather than any employer requirement, de facto or otherwise. *See, Bamonte* at 1220.

For example, when Johnson was asked why he dressed at the Perris station, and not somewhere else, his response was that the main reason was "officer safety." [RP, Day 2, 5/8/08, 11:9-12:4.] Plaintiff Broussard similarly responded that he put on his equipment at the station, and not at home, because of safety issues -- and not because of any purported Department policy. [RP, Day 2, 5/8/08, 133:1-23.] Plaintiff Dierks expressly acknowledged that the reason he "geared up at the station" was because it was his **"personal preference,"** but he also cited that it was an "officer safety issue." [RP, Day 2, 5/8/08, 228:16-24.] When McMurrich was asked why he "geared up" at work, he also did not cite any Department mandate, but instead stated that he "didn't like driving back and forth with it [his uniform and equipment]" and discussed that he didn't like to take his boots home because the facilities were "not always the cleanest." [RP, Day 3, 5/9/08, 58:2-6.] McMurrich also stated that he dressed at the correctional facilities because it was his "personal preference" and that there was "no department requirement that [he] dress in [his] uniform at the facilities." [RP, Day 3, 5/9/08, 76:17-24.][9] Barker similarly

---

[9] When asked why he would put on his uniform at the station, Plaintiff Segobia responded that "it was handy, instead of me lugging my stuff back and forth from home....Second thing was an officer safety issue. I didn't want to get dressed at home so people would know what I did, I mean as far as being a cop...." [RP, Day 5, 5/14/08, 231:15-232:11.] Boyd responded that he would get dressed at home during the course of his career with the Department as a matter of "personal preference." [RP, Day 7, 5/16/08, 34:11-17.]

8

Defendant County Of Riverside's Renewed
Motion for Judgment As A Matter Of Law

504755.2 RI080-032

testified that he came to work at the Southwest Detention Center dressed because it was "more convenient for me to change at home, put my uniform on at home. And what I would do is I would put a jacket on over my shirt so nobody would know I was in law enforcement to drive to work." [RP, Day 6, 5/15/08, 137:9-14.]

That the majority of deputies dressed at the station is irrelevant. The proper inquiry is whether deputies had the *option and ability* to don and doff their uniforms and equipment off work premises. Strikingly, **26 witnesses**, out of the 35 total witnesses who testified at the phase one trial, testified either that they dressed at home, were aware of deputies dressing at home, dressed at work as a matter of personal preference or officer safety, and/or were not aware of any Department policy which required deputies to dress at work. Clearly deputies did have a very real ***option and ability*** to dress in their uniforms and equipment at home because many of them did so, and without any adverse consequences. Therefore, Plaintiffs' donning and doffing of their uniforms and equipment is not compensable work under the FLSA.

## III. RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

### A. The Legal Standard for Renewed Motion for Judgment as a Matter of Law

If the court denies a Motion for Judgment as a Matter of Law ("JMOL") made at the close of all the evidence, the moving party may renew its request for judgment by filing a JMOL no later than 28 days after the clerk has entered judgment. Fed. R. Civ. P. Rule 50(b). In ruling on the JMOL after the jury has returned a verdict, the court may direct entry of judgment in favor of the moving party as a matter of law, order a new trial, or allow the judgment to stay. *Id.* The Motion may be made for either complete or partial judgment. *Ace v. Aetna Life Ins. Co.*, 139 F.3d 1241, 1247 (9th Cir. 1998).

As with a Rule 50(a) Motion made at the close of evidence, a post-verdict JMOL challenges the sufficiency of the evidence. A JMOL will be granted if the

only reasonable conclusion, considering all reasonable inferences in favor of the verdict, is that the moving party is entitled to judgment as a matter of law. *Gilbrook v. City of Westminster*, 177 F.3d 839, 864 (9th Cir. 1999). The standard for granting a JMOL is equivalent to the standard for granting summary judgment. *Hopkins v. Dow Corning Corp.*, 33 F.3d 1116, 1121 (9th Cir. 1994).

A party filing a renewed JMOL may also file a motion for new trial at the same time. The court must ultimately rule on both motions, specifying the reasons for granting or denying a new trial in case the JMOL is reversed on appeal. Fed. R. Civ. P. Rule 50(c)(1); *Weisgram v. Marley Co.*, 528 U.S. 440, 452 (2000). If the court grants this Motion, it must also grant Defendant's Motion for Partial New Trial because if there is insufficient evidence to support the verdict (JMOL), then necessarily the verdict would also contravene the more lenient standard for new trial – that the verdict goes against the clear weight of the evidence. Further, in the event the court finds the evidence sufficient to withstand a Rule 50 Motion, a partial new trial may nonetheless be warranted for the reasons stated below.

**B. There is Not Sufficient Evidence to Support a Finding that Plaintiffs are Entitled to Compensation for Donning and Doffing their Uniforms and Equipment**

To establish a claim for unreported uncompensated overtime for donning and doffing uniforms and equipment, Plaintiffs must have proven by a preponderance of the evidence that:

1) Donning and doffing of uniforms and equipment is work controlled or required by the County;

2) Donning and doffing of uniforms and equipment is an integral and indispensable duty; and,

3) Donning and doffing of uniforms and equipment is not *de minimis*. *Bamonte* at 1224.

As the Ninth Circuit did in *Bamonte*, Defendant will assume for the sake of argument that the first prong of the test was met, that donning and doffing of

uniforms and equipment is work controlled or required by the County. *See*, *Bamonte* at 5. As to the third prong of the test, this Court has already determined that the time spent donning and doffing uniforms is *de minimis*.[10] As to the second prong of the test, however, there was not sufficient evidence to support the jury's finding that the donning and doffing of uniforms and equipment was an integral and indispensable duty. To prove that an activity is integral and indispensable, Plaintiffs must have shown by a preponderance of the evidence that:

a) Donning and doffing of uniforms and equipment at work is necessary to performing law enforcement duties; and,

b) Donning and doffing of uniforms and equipment at work is done for the benefit of the County. *Bamonte* at 1224-1228.

Thus, where the evidence shows that the donning and doffing of uniforms and equipment on Department premises is not required by law, by rules of the employer, or by the nature of the work, then donning and doffing of uniforms and equipment cannot be found to be integral and indispensable to the work of law enforcement. *Bamonte* at 1224, 1231; *Alvarez, supra* at 903; 29 C.F.R. § 790.8(c) n.65.

Contrary to the substantial evidence detailed above, the jury found that the donning and doffing of uniforms and equipment was integral and indispensable to Plaintiffs' principal law enforcement activities.[11] There is no dispute that donning

---

[10] While this Court has already ordered that Plaintiffs are not entitled to any damages related to donning/doffing uniforms and sworn and non-sworn corrections equipment, Defendant nonetheless requests that the Court expressly rule that donning and doffing of uniforms also is not compensable because it is not integral and indispensable, in order to preclude a needless appeal on the issue of the Court's *de minimis* ruling.

[11] The jury answered "yes" to Special Verdict question Nos. 1 and 2, "Is donning/doffing a uniform and equipment integral and indispensable to plaintiffs' principal law enforcement activities. Special Jury Instruction No. 7, Pre- and Post-Shift Activities stated that "[a] special rule applies to conduct done before and after a shift that is 'preliminary' or 'postliminary' to preparing to work. Even if it constitutes work and even if the employer is aware of it, it is not compensable unless it is 'integral and indispensable' to a principal activity of the employer. Here, to establish that Plaintiffs' alleged activities performed before and after their shifts are compensable overtime work, Plaintiffs must show that their activities were integral and indispensable to a principal activity of Defendant. An 'integral and indispensable' activity must be necessary to the principal work performed and done for the benefit of the employer." [Document No. 229, p.42.] Special Jury Instruction No. 9, Compensable Activity -- Donning and Doffing Off Work Premises, then defined that "[d]onning and doffing should be considered integral and indispensable to a principal activity only if it is required to be done on the premises 'by rules of the employer or by the nature of the work.'"

and doffing of uniforms and equipment is not required by law or by any express Department or County rule or policy. [See, Document No. 134, 9:27-10:1.] The decision in *Bamonte* makes it clear that the nature of law enforcement work itself does not require donning and doffing on Department premises. *Bamonte* at 1231 ["There is no rule, regulation, policy or practice of the City that limits the officers' option in any way. Although logical reasons exist for the police officers not to avail themselves of the at-home option, such as comfort, safety concerns, and exposure of family members to certain substances, these reasons reflect preferences rather than mandates. In sum, donning and doffing of uniforms and related gear are not required by law, rule, the employer or the nature of the police officers' work to be performed at the employer's premises."] And in light of Plaintiffs' own testimony that deputies were free to change into and out of uniforms and equipment at home, the jury could not reasonably find that there was any *de facto* policy otherwise.

Accordingly, based on the clear standards confirmed in *Bamonte v. City of Mesa*, and given the evidence detailed above, no reasonable jury could find that the donning and doffing of uniforms and equipment was integral and indispensable, and therefore compensable. As such, this Court must enter judgment in favor of the County regarding Plaintiffs' donning and doffing claim.

### IV. IN THE ALTERNATIVE, THE COUNTY MOVES FOR A PARTIAL NEW TRIAL, AS TO PLAINTIFFS' DONNING AND DOFFING CLAIM ONLY

For the reasons detailed above in relation to the County's Renewed Motion for Entry of Judgment, this Court should also grant the County's Motion for a Partial New Trial of Plaintiffs' donning and doffing claim. The jury's verdict that donning/doffing of uniforms and equipment is integral and indispensable to Plaintiffs' principal law enforcement activities is against the clear weight of the evidence, because Plaintiffs did not prove by a preponderance of the evidence that

---

[Document No. 229, p.43.]

they were required to dress on Department premises. Additionally, as detailed below, this Court erred in not instructing the jury that where an employee changes into his/her uniform and equipment at the workplace for the employee's own convenience, it does not transform the donning and doffing into a principal (and therefore compensable) activity.

### A. The Standard for a Motion for Partial New Trial

A party may move for a new trial if an error of law was made that substantially prejudiced the party or if the clear weight of the evidence does not support the verdict. See, FRCP Rule 59. Unlike judgment as a matter of law, a motion for partial new trial requires the Court to weigh the evidence and assess the credibility of witnesses. *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990). The Court does not have to view the evidence in the light most favorable to the prevailing party. *Landes Constr. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987).

Thus, even if substantial evidence exists in favor of Plaintiffs, the Court is not prevented "from granting a motion for new trial pursuant to Fed.R.Civ.P. 59 if the verdict is against the clear weight of the evidence." *Landes, supra* at 1371. The Court also has the power to *sua sponte* grant a motion for partial new trial on grounds not alleged by the moving party. *Murphy, supra* at 187. Accordingly, a trial court is expected to grant a partial new trial if "the judge on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Landes, supra* at 1371-72.

In light of *Bamonte v. City of Mesa*, it is clear that to the extent there was a finding that donning and doffing is compensable, there has been a mistake.

///
///
///
///

### B. This Court Should Order a Partial New Trial Because the Jury's Verdict as to Donning and Doffing was Against the Clear Weight of the Evidence and Because the Court Erred in Not Instructing the Jury on the Issue of Employee Convenience

Defendant proposed the following as Special Jury Instruction No. 8, "Compensable Activity -- Donning and Doffing for Employee Convenience:"

> "If employees have the **option and the ability** to change into their deputy sheriff's uniform and protective gear at home, then changing into the uniform and gear at the workplace for the employees' own convenience does not make that activity a principal activity, even when it takes place at work. **Source**: 29 C.F.R. § 790.8(c); Wage & Hour Adv. Mem. No. 2006-2; Abbe v. City of San Diego, 2007 WL 4146696, *6 (S.D.Cal. 2007)." [Document No. 185, p.8 (electronic page 14 of 27) [bold and underline emphasis added].]

The Court rejected this proposed instruction and did not instruct the jury on the issue of donning/doffing at work for the employees' convenience.

The Court may grant a partial new trial if an erroneous or inadequate jury instruction was given. *Murphy, supra* at 187. The Court is "fully empowered to reverse its evidentiary rulings post-trial and to reconsider that evidence's effect on the trial." *Conner v. Schrader-Bridgeport Int'l, Inc.*, 227 F.3d 179, 194 (4th Cir. 2000). So long as the evidence supports a proposed jury instruction and the proposed instruction is legally correct, a party has the right to have the jury instructed on its legal theory and it is an error for a trial court to refuse to provide such an instruction. *Williams v. Jader Fuel Co., Inc.*, 944 F.2d 1388, 1402 (7th Cir. 1991).

Here, the Court approved and offered the County's Special Jury Instruction Nos. 7 (Pre and Post-Shift Activities) and 9 (Compensable Activity -- Donning and Doffing Off Work Premises), but inexplicably rejected Special Jury Instruction No. 8. The authorities cited to support Special Jury Instruction No. 8 were expressly and extensively relied upon by the Ninth Circuit in *Bamonte v. City of Mesa*, as proper factors to consider in deciding the compensability of donning and doffing:

///

> "In 29 C.F.R. § 790.8, the DOL declared that principal activities 'include [] all activities which are an integral part of a principal activity.' [cite] Section 790.8 also provides the following example of integral activities:
>
> 'Among the activities included as an integral part of a principal activity are those closely related activities which are indispensable to its performance. If an employee in a chemical plant, for example, cannot perform his principal activities without putting on certain clothes, *changing clothes on the employer's premises* at the beginning and end of the workday would be an integral part of the employee's principal activity. **On the other hand, if changing clothes is merely a <u>convenience</u> to the employee** and not directly related to his principal activities, it would be considered as a preliminary or postliminary activity rather than a principal part of the activity....'" *Bamonte* at 1221-1223, 1229, citing to 29 C.F.R. § 790.8 [italic emphasis in original, bold and underline emphasis added]; see also, *Bamonte* at 1228, citing to *Abbe, supra.*

And in citing to the May 31, 2006 DOL memorandum, the Ninth Circuit used the identical "option and ability" language proposed in Special Jury Instruction No. 8:

> "It is our longstanding position that if employees have the **option and ability** to change into the required gear at home, changing into that gear is not a principal activity, even when it takes place at the plant." (*Bamonte* at 1226, citing to Wage & Hour Adv. Mem. No. 2006-2 [emphasis added].)

Thus, the Court's failure to provide any instruction -- that where deputies had the option and ability to don/doff their uniforms at home, but instead donned and doffed their uniforms and equipment at work for their convenience, it is not a principal (or compensable) activity -- was unreasonable and substantially prejudiced the County, because the overwhelming evidence presented showed that Plaintiffs did have the "option and ability" to dress at home and only dressed at work for their own benefit and convenience. The Court's failure to provide this instruction was a factor which caused the jury to find in favor of Plaintiffs on the donning and doffing claim. For this reason, the County must be given a new trial as to Plaintiffs' donning and doffing claim.

## V. CONCLUSION

For the reasons stated above, Defendant respectfully requests the Court enter judgment in favor of Defendant with respect to Plaintiffs' donning and doffing claim, or in the alternative, order a partial new trial regarding Plaintiffs' donning and doffing claim only.

Dated: May 24, 2011

LIEBERT CASSIDY WHITMORE

By: _____
Brian P. Walter
Laura J. Kalty
Attorneys for Defendant
COUNTY OF RIVERSIDE